WEISSER, Appellant, v. KROPUENSKE, et al, Respondents.

(226 W. W. 760.)

(File No. 6615.   Opinion filed September 20, 1929.)

*Hitchcock & Sickel,* of Mitchell, for Appellant.

*W. L. Redden,* of Tyndall, and *Bogue & Bogue,* of Parker, for Respondents.

MISER, C. In 1920, respondent John K. Kropuenske purchased from appellant an quarter· section of land in Charles Mix county, for which he agreed to pay $16,425.99. He paid $3,500 in cash, assumed and agreed to pay two mortgages on the land given by appellant, one for $5,000 and the other for $2,800, and gave a third mortgage to appellant securing his note for $4,812. On September 29, 1924, Kropuenske found himself unable to pay the taxes on the land and the interest on the three mortgages. As a result of a conference on that day between appellant and Kropuenske, appellant drew up a contract, the provisions of which were as follows:

"Whereby the party of the first part [appellant] agrees to release a certain mortgage in the amount of $4,812 on the following described land: * * * For and in consideration of the above the party of the second part [respondent] agrees to divide equally all property, securities and moneys received on the above described land subject to two mortgages now of record.

"The above agreement will be in force upon the renewal of the two mortgages now of record, to be signed by John Kropuenske and wife."

This contract was signed by both parties. Thereafter respondent and wife signed additional coupons and an extension agreement, extending the first mortgage of $5,000 for five years, and had an oral agreement with the owner of the second mortgage of $2,800 also extending it for five years. He thereafter paid the first interest coupon so signed by himself and wife, and at the time of trial had paid $167 on the second interest coupon, which had come due just a few days prior thereto, and had made arrangements to pay the balance of said interest coupon in full. He had paid the interest due on the second mortgage up to the time of trial of the action, and the taxes on the land. The income from the land was insufficient to pay the interest on the two mortgages and the taxes on the land. He still owned the land, which it had been impossible to sell for more than the amount of the two mortgages.

In February, 1926, appellant sued respondents on their note for $4,812. Respondents, in their answer, admitted the execution

of the note, but alleged its satisfaction by the written agreement of September 29, 1924. The trial court found the facts substantially as above stated, and concluded that the note on which the suit was predicated had been superseded by the written contract of September 29, 1924, and that consequently appellant's complaint should be dismissed.

■ ■ Appellant contends that the renewal of the two mortgages over the signature of respondents was a condition precedent in the contract of September 29, 1924, and, said condition precedent not having been fulfilled by respondent, the contract itself was not in force. Appellant calls attention to the last paragraph of the contract:

"The above agreement will be in force upon the renewal of the two mortgages now of record, to be signed by both Kropuenske and wife."

The trial court did not find that the two mortgages had been renewed. The trial court did find that respondents had secured an extension contract on the first mortgage for a period of five years, which extension agreement was signed by respondents; that respondents also executed interest coupons evidencing the interest to become due on that mortgage indebtedness during the period of extension, and that respondents had secured an oral extension on the second mortgage for a like period of time; but the trial court did not find that these acts of respondents constituted a renewal, within the meaning of the contract.

The contract was drafted so as to cause, rather than to obviate, controversy as to its meaning; but, if respondents are to be relieved from the payment of their note, it must appear that they have performed the conditions which they agreed to perform. What were the contractual obligations of the parties? What was the contract? Although counsel for respondent announced at the opening of the trial that the only question in the case was the construction of a written contract, both sides introduced oral evidence, the purpose of which could only have been to establish what was the contract between the parties and clarify the language used in their writing. As gathered from all admissible evidence introduced, what did the parties intend by their contract? If they intended, as appellant testified, that the contract to release the debt was not to be in force until respondents satisfied the two prior

mortgages, by executing instead thereof new mortgages signed by both of respondents, and entirely relieved appellant of liability on said mortgage debts, there is certainly no evidence in the record that respondents fulfilled such a condition. If they intended, as the other party to the contract testified, that appellant would release the debt providing respondents renewed—that is, took care of—the two prior mortgages, and nothing else was said about releasing appellant from personal liability on said mortgage, this would affect the interpretation of the word "renewal" used in the writing.

The word "renewal" has various meanings. Instead of determining as a matter of fact what the actual contract between the parties was, the findings of fact set out only the written contract in hæc verba. If the contract had been complete, unambiguous, and certain in its terms, it would have been sufficient to so find. Here the findings fail to state what the actual contract of the parties was and also fail to state that respondents fulfilled the conditions on their part to be performed. It is true, as pointed out by respondent, that, inasmuch as appellant drafted the contract, the language of the contract should be interpreted most strongly against appellant, who caused the uncertainty to exist. Section 884, Rev. Code 1919. This, however, is one of the rules for the interpretation of contracts, not a reason for failing to interpret.

Because the findings are insufficient to support the conclusions of law and the judgment entered thereon; the judgment must be and is reversed, and a new trial ordered.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.