**David SPATZ et al.,**

v.

**Frank J. NASCONE and Frank J. Zappala, Jr.**

**Civ. A. No. 72-847.**

United States District Court, W. D. Pennsylvania.

Dec. 21, 1973.

Judd N. Poffinberger, Jr., Pittsburgh, Pa., for plaintiffs.

Walter T. McGough, Pittsburgh, Pa., for defendants.

## OPINION AND DECREE

SNYDER, District Judge.

The Plaintiffs in this proceeding filed a Motion that the Court (1) vacate and set aside its Order entered October 12, 1973, granting Defendant's Motion for Summary Judgment and (2) enter an Order denying Defendant's Motion for Summary Judgment and directing that this action proceed on the merits. In addition to opposing the Plaintiff's Motion to Vacate and Set Aside the Order of October 12, 1973, the Defendants filed a Motion to Strike the Plaintiff's Motion.

The basis of the Defendant's Motion to Strike the Plaintiff's Motion was an allegation that the Plaintiff's Motion was improper and not allowed by the Federal Rules of Civil Procedure. While it is true that we can find no reference whatsoever in the Federal Rules of Civil Procedure for a Motion to Vacate and Set Aside a Summary Judgment, the Courts have universally held that since the Amendment of 1946 which added Subsection (e) to Rule 59 of the Federal Rules of Civil Procedure,[1] the wording

---

1. Rule 59(e) provides as follows:
   "*Motion to Alter or Amend a Judgment.* A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

of this subsection was broad enough to include what were in substance Motions for Reconsideration of Orders Finally Disposing of Actions before Trial. Torockio v. Chamberlain Mfg. Co., 456 F. 2d 1084 (3rd Cir. 1972); Sonnenblick-Goldman Corp. v. Nowalk, 420 F.2d 858 (3rd Cir. 1970); Gainey v. Brotherhood of Railway & Steamship Clerks, Etc., 303 F.2d 716 (3rd Cir. 1962). In the latter case the following appears (at Page 718):

". . . Rule 59 has been properly described as 'an amalgamation of the motion for new trial at common law and the petition for rehearing in equity adapted to the unified procedure (8) * * *.' 6 Moore, Federal Practice (2d ed. 1953) ¶ 59.02, at 3707. Of course, technically there is no trial when summary judgment is granted. But even before Rule 59 was amended in 1946 to add subsection (e), specifically providing for motions to alter or amend a judgment, the original provision of the Rule authorizing a party to move for a new trial within ten days after judgment was construed by several courts as broad enough to include motions for reconsideration of orders finally disposing of action before trial. Jusino v. Morales & Tio, 1st Cir. 1944, 139 F.2d 946; Safeway Stores, Inc. v. Coe, 78 U.S.App.D.C. 19, 1943, 136 F.2d 771, 148 A.L.R. 782. Since the addition of subsection (e) the courts which have considered the problem seem to have experienced no difficulty in concluding that a motion for rehearing or reconsideration made within ten days after the entry of an appealable order is within the coverage of Rule 59 . . . ." (Emphasis added.)

■ It is, therefore, apparent that the Defendant's Motion to Strike the Plaintiffs' Motion to Set Aside the Order of October 12, 1973, must be denied.

We then come to the consideration of the substance of the Plaintiffs' Motion to Vacate and Set Aside the Order of October 12, 1973. Without attempting to set forth in full what was contained in a twenty-seven page opinion, suffice it to say that the Order granted the Defendant's Motion for Summary Judgment in a diversity suit based on a contract which contained a provision that "This Agreement shall be interpreted under Pennsylvania law and any disputes hereunder shall be tried in the Courts of the Commonwealth of Pennsylvania, the parties hereby waiving the right to a jury trial." The Plaintiffs claim that the Defendants breached the agreement involving the sale of real property located in the State of New York. The Defendants moved to dismiss on the basis that the provision of the agreement limited the Plaintiffs to maintaining their action only in the State Courts of Pennsylvania. The Court treated the Motion as a Motion for Summary Judgment under Rule 56. For the reasons hereinafter set forth, the Plaintiffs' Motion to Set Aside the Order of October 12, 1973 is denied.

Plaintiffs' counsel in a rather lengthy brief repeats the arguments which were presented in their numerous briefs and memoranda submitted prior to our decision of October 12, 1973. We do believe, however, that the following may be of assistance in stating the Court's position with respect to the Plaintiffs' arguments.

## ZAPPALA AFFIDAVIT

Contrary to what appears in the record of this case, the Plaintiffs claim that the Court accepted the statement contained in an affidavit of Richard Zappala dated March 1, 1973. This affidavit was flatly contradicted according to the Plaintiffs by both paragraph five of the supplemental affidavit of Donald Kahan and by Kahan's deposition testimony. It is then their contention that the facts set forth in this affidavit should not have been considered by the Court.

In the original order filed in this case on March 26, 1973 by District Judge Joseph Weis, Jr. (now on the Bench of the Third Circuit), he found that the phrase "Courts of the Commonwealth of Penn-

sylvania" was ambiguous since it was "susceptible of either a possessive or geographic connotation." He held that since there was a genuine factual issue as to its meaning, it would be necessary to schedule a preliminary hearing to resolve the factual issues, so that the litigation could proceed on the merits either in the Federal Courts or the State Forum. After numerous depositions and affidavits, the Defendants renewed their Motion for Summary Judgment, and it was necessary for this Court to again review the ambiguity of that phrase of the agreement relating to the "Courts of the Commonwealth of Pennsylvania".

In our Opinion of October 12, 1973, we set forth that the Agreement disclosed that the Defendants, real estate developers based in Pennsylvania, had sold to the Plaintiffs' assignee, who was a citizen of Illinois, commercial real estate located in the State of New York. Thus, the transaction touched three states. Then, apparently, in order to resolve any uncertainty as to which of the three state laws would govern, or to avoid uncertainty within a given state as to a proper choice of law, the parties determined that the Agreement should be interpreted under Pennsylvania law. Secondly, it prescribed clearly that any dispute was to be tried "in the Courts of the Commonwealth of Pennsylvania." Pennsylvania was the domicile of the Defendants. In light of the principles of law applicable to this case, that is, that there was a patent ambiguity, we were then required to determine whether or not there were any indications as to construction of the language. In this context we referred to the affidavit of Richard Zappala. It is clear that while Richard Zappala acted as attorney for the Defendants and worded this clause in this transaction, the forum selection clause was carried verbatim from the language of a previous real estate purchase agreement between the principals. It was in this context that this Court referred to the Zappala affidavit, not from the standpoint of whether or not he had

specifically construed the language "Courts of the Commonwealth of Pennsylvania" but merely to indicate that there was a discussion concerning the clause and that consequently there would be applicable the well recognized exception to the rule of construction that an instrument is most strongly construed against he who worded it. That exception is where a contract is the result of the joint efforts of attorneys or negotiators, then it is not to be construed against either party. Consumers Ice Company v. United States, 475 F.2d 1161 (Ct.Claims 1973); Kaiser Aluminum & Chemical Corporation v. United States, 388 F.2d 317, 181 Ct.Cl. 902 (1967); Carter v. Certain-Teed Products Corp., 200 F.2d 754 (8th Cir. 1953); United States v. Continental Oil Company, 237 F.Supp. 294 (W.D.Okl. 1964). It is, thus, clear that the Court did not accept the testimony of Zappala and reject the contradictory testimony of Kahan. We were concerned only with the fact that the discussion about the forum selection clause had taken place and the evidence was clear that the discussion did, in fact, occur.

In the following passage from the transcript of the deposition of Donald Kahan, Plaintiffs' lawyer in the real estate transaction, he states that the discussion concerning the forum selection clause in the Canton Agreement took place. The "prior agreement" referred to in this portion of the testimony is an agreement covering real estate in Altoona, Pennsylvania. That agreement did not contain a forum selection clause.

"Q. And looking at that agreement, does your recollection concur with Mr. Zappala's that you and he discussed that draft?

THE WITNESS: Will you repeat the question?

(Thereupon the record was read.)

A. Yes, we did.

Q. And before discussing it with him, had you studied it?

A. I read it.

Q. Well, did you read it like you would a newspaper or read it like a lawyer who is engaged in representing clients in that sort of transaction?

A. Like the latter.

Q. And then you discussed certain suggested changes with Mr. Zappala?

A. Yes, I did.

Q. Do you have any recollection of being aware that this agreement as opposed to the prior one, contained a forum selection clause?

A. Contained a clause which I'll read again which says quote this agreement shall be interpreted under the Pennsylvania law and any disputes hereunder shall be tried in the courts of Commonwealth of Pennsylvania.

Q. Yes. Well, in reviewing it, do you have any recollection of having any thought and I do want to probe your mental processes, that here was a provision that was not in the prior agreement that you and Dick worked out together?

A. Yes, I did.

Q. And did you discuss that provision with him?

A. Yes, I did."

(Transcript of Deposition of Donald A. Kahan, May 23, 1973, at pages 9–10).

In our opinion of October 12, 1973, we examined the agreement, the affidavits and the depositions, and without consideration of any expressed intent of the parties in these depositions could not find any operative usage or circumstances which would clearly indicate a set meaning for the forum selection clause. We then concluded that upon very careful analysis of the disputed language it must be interpreted to mean that suit should be brought only in the State Courts of the Commonwealth of Pennsylvania. Counsel for the Plaintiffs strongly urged that the Court was bound to apply the Secondary Rule of Construction that language which remains ambiguous after exhaustion of the Primary Rules of Construction is to be construed most strongly against the party who drafted it. This came after the Court had already decided that this Secondary Rule was not applicable.

As previously pointed out: (1) The transaction touched three States (New York, Illinois, and Pennsylvania), and there was thus potential of uncertainty as to both the choice of applicable law and location of suit; (2) The contract resolved the uncertainty by requiring that the Agreement be interpreted under Pennsylvania law—obviously the law with which the Defendants, as real estate developers, were most familiar with; (3) Certainly, the convenience of the Defendants would be served by requiring suit to be brought at their home base, in Pennsylvania, rather than in New York or Illinois. Moreover, suit in Pennsylvania would further assure the application of Pennsylvania law; (4) It is equally clear that the clause was discussed and that the parties evidenced no particular intent with respect to the meaning of this phrase which had been negotiated in a prior contract. The Court then concluded that in light of these circumstances, Courts of the Commonwealth of Pennsylvania meant State Courts.

Contrary to the contention of the Plaintiffs, the Court did not consider any other circumstances not disclosed in the Opinion; such inference we believe to be entirely unjustified.

### COURT'S ENFORCEMENT OF FORUM SELECTION CLAUSE

Counsel for the Plaintiffs also strongly urge on this Court that contrary to its Opinion of October 12, 1973, the forum selection clause barring resort to a Federal Court should not be enforced.

As we conceive the Plaintiffs' contention, it is that the only forum selection clauses which have been enforced (as in M/S Bremen v. Zapata Off-Shore Co.,

407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 345 (3rd Cir. 1966)) involved the choice of location of suit within one state or country and that, therefore, the reasoning set forth in those cases should not be considered as applicable to barring Federal jurisdiction, in light of a strong public policy underlying diversity jurisdiction in Federal Courts. Suffice it to say that in our Opinion of October 12, 1973, we set forth that we were perfectly aware that the Supreme Court decision in the *Bremen* case came only in the context of the choice of forum between one in this country and one in England. We stated, however, that there was no reason "that the broad principles in that decision would not be applicable to the instant case." There was cited as well the very persuasive language from In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972) (at Page 234, Footnote 24) as follows:

"A party in Van Dusen's position desiring to eliminate the possibility of out of state litigation could do so by avoiding any contractual relationship with an out of state resident, of course. A more practical alternative however might be to stipulate in the contract the forum of choice. In recent years most courts have given effect to such stipulations where the forum chosen is reasonable and the contract involved is not one of adhesion. See, for example, Central Contracting Co. v. Maryland Casualty Co., 367 F. 341 (3d Cir. 1966); but see Indussa Corp. v. S. S. Ranborg, 377 F.2d 200 (2d Cir. 1967). This year it would seem that the Supreme Court gave conclusive sanction to the practice of accepting such stipulations as binding in appropriate circumstances. M/S Bremen and Unterweser, Reederei, GMBH v. Zapata Off-Shore Company, 407 U.S. 1, 92 S.Ct. 1907, 32 L. Ed.2d 513, decided June 12, 1972. Although the Supreme Court decision came in the context of a choice between

a forum in this country and one in England, the principles announced in it would seem equally applicable to domestic choice of forum questions."

While counsel for Plaintiffs feels there is no warrant for interpreting *Van Dusen* to suggest that the rationale of *Bremen* is decisive of federal versus state questions, this Court, to the contrary, feels exactly the opposite and so holds.

We do not find in any of the discussions relating to diversity jurisdiction of the United States Courts, any stated policy that where the parties have made a choice of forum, that forum should not be enforced because of the diversity jurisdiction of the Federal Courts.

In addition, the Plaintiffs contend that the Court has entirely misapprehended its argument regarding the balancing of interest. Their argument goes something like this: (1) in determining whether to enforce the clause in question, a successive balancing of interest is required, (2) a strong public policy underlies the diversity jurisdiction, and (3) that policy must enter into the balancing of the interest. It seems to this Court that what the Plaintiffs are arguing is that the Court must take into consideration a balancing of interests even where the contract is determined to exclude Federal jurisdiction. Plaintiffs are correct to some extent when they state as follows:

"What the Court is really saying is that a party to a contract is free to 'determine', *ipse dixit*, that he has a commercial interest which is to be served by limiting suit to a state court. In other words, that the Court need not balance the respective interests of the parties at all, but must accept the 'determination' of one of them, whether or not the interest asserted has substantial basis and whether or not there is a substantial countervailing interest."

The difficulty here is that it was not the determination of one of them, but it was the result of a negotiated contract in

which the language was construed to mean suit could be brought only in a State Court. We reiterate that the parties are free to "determine" where their commercial interest lies and whether or not their commercial interests are to be served by limiting suit to the State Courts.

Thus, we believe that the previous Order of this Court of October 12, 1973, granting Summary Judgment for the Defendants should not be vacated and an appropriate order will be entered denying the Plaintiffs' Motion.