### No. C-1048

**Centennial Enterprises, Inc., a Colorado Corporation v. Mansfield Development Co., a Colorado Corporation, Anne Christine DuCharme, Jeanne Marie Potarf, Kathryn Lee Murphy, Ellen Mae David and Mary Patricia DuCharme**

(568 P.2d 50)

Decided August 22, 1977.                    Rehearing denied September 12, 1977.

Lawrence Litvak, Beverly B. Netzorg, Litvak and Karsh, for petitioner.

Westel B. Wallace, Wayne D. Williams, for respondents.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The issue before us here turns upon the interpretation of an escalation clause in a subleasing agreement between Mansfield Development Co., the primary lessee, and Centennial Enterprises Inc., the sublessee. The trial court adopted Mansfield's interpretation and the court of appeals affirmed. *Mansfield Development Co. v. Centennial Enterprises, Inc.*, 38 Colo. App. 36, 554 P.2d 1362 (1976). We granted certiorari and we now affirm the judgment of the court of appeals.

Paragraph six of the sublease provides:

"The annual minimum lease fee payable to Lessors shall be adjusted at one year intervals commencing with the lease fee due June 1, 1973, and every year thereafter to reflect the average change in the purchasing power of the dollar. Such adjustments shall be on the following basis: The Consumer Price Index as prepared by the United States Department of Labor shall be used as the basis of computation. Said index shall be taken for May 1 of each year during the term of this agreement and the price index thus obtained shall be considered the applicable index for the rent payable during the next ensuing fiscal year. Said index obtained shall be compared with the price index figure for May 1, 1972 and the $78,000 annual rent figure shall be varied (either increased or decreased) in the same ratio that the price index for the period bears to the price index figure of May 1, 1972. The formula for the rent is as follows: New rent for the next succeeding year is to $78,000 as the average price index for the past year period is to price index of May 1, 1972. . . ."

Centennial contends that the general rules of contract construction favor an interpretation of paragraph six in which the applicable index is derived by adding the monthly Consumer Price Index figures for the past year and then dividing by twelve. We do not agree with this interpretation.

A contract must be construed in order to effectuate the intent of the parties. *Charles Ilfeld Co. v. Taylor*, 156 Colo. 204, 397 P.2d 748 (1964). The district court found that the intent of this clause was to provide in annual rent, an amount of money equivalent to the amount represented on May 1, 1972 by $78,000. Evidence presented at the trial supports this conclusion and we find no compelling reason to override this finding of the trial court.

The record shows that the base lease between the owners of the property and Mansfield did have a clause which directed that the yearly indices be "averaged" in order to vary the amount of the rental payment. It would have been a simple matter for a similar clause to have been inserted in the sublease, if that had been the intention of the parties. Instead, the evidence shows, such a provision was specifically rejected by representatives of the respondents.

In addition, all of the experts who testified agreed that in order to provide for the equivalent of $78,000 in 1972 dollars, the most recent monthly Consumer Price Index figure should be used rather than the "average" of the last twelve. Dr. Koza, a professor at the University of Colorado in the area of managerial economics, testified that using the latest index number is the method recognized in the accounting field as the proper approach. *See Hecht, Variable Rental Provisions in Long Term Ground Leases*, 72 Colum. L. Rev. 625, 652 (1972).

Centennial agrees that Mansfield's interpretation is consistent with sentences two and three of paragraph six but argues that certain phrases contradict that interpretation. Centennial specifically draws attention to the use of the words "average change" in the first sentence and the phrase "average price index for the past year period" in sentence five.

It is clear that the Consumer Price Index is, itself, an average figure. The index represents ". . . a weighted average of price changes for a sample of priced items. . . ." *Bureau of Labor Statistics, BLS Handbook of Methods for Surveys and Studies*, Bulletin 1711 at 87. After hearing all of the testimony, the trial court determined that the clauses taken together and considered as a whole referred to the change in the index from one May to the next. The ineptness of expression here required the trial court to determine the intent of the parties and that it did. As we have said, there is evidence in the record to support this conclusion and, under such circumstances, the decision must stand.

Finally, Centennial argues that the contract should be construed against Mansfield since Mansfield drafted the agreement. *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965). The evidence clearly indicated that the agreement was the product of several negotiating sessions and that Mr. Carey of Centennial was responsible for at least one draft of the contract. The rule cited by Centennial, therefore, has no applicability.

Judgment affirmed.