Robert L. CARR, William F. Maher and Curtis L. Sorum, d/b/a Aqua 4, A Partnership, Plaintiffs and Appellees,

v.

BENIKE, INC. and Dave Benike, Defendants and Appellants.

No. 14633.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1985.

Decided March 27, 1985.

Leon J. Vander Linden, Webster, for plaintiffs and appellees.

Galen G. Gillette, Redfield, for defendants and appellants.

WUEST, Acting Justice.

This appeal involves an action for breach of a farm lease agreement. The trial court held that lessee breached the lease and rendered judgment in favor of lessor in the amount of $21,938.08. We remand to the trial court to consider an abatement of lessor's damages.

Lessors Robert Carr, William Maher, and Curtis Sorum, a partnership doing business as Aqua Four (appellees), entered into a written farm lease with Benike, Inc. and Dave Benike (appellants) on April 7, 1982 for two years. Under the terms of the lease, appellants were to farm one-half section of land in Spink County, South Dakota. This land was equipped with center-pivot irrigation equipment and wells located in each of the two quarters covered by the lease. The lease provided that appellants pay $12,500 for land and buildings, and $17,000 for wells and irrigation equipment. The sum of $12,750 was paid when the lease agreement was signed and the balance of $16,750 was to be paid on or before October 1, 1982, which balance was never paid.

At the time the lease was executed, the previous owner of the property, Harold Dirksen (Dirksen), was still in possession of the building site located on one of the quarters. Dirksen remained in possession of the building site, without appellees' consent, until the spring of 1983, at which time the buildings were removed to allow the irrigation system to become fully operational. Appellants failed to remit the $16,750 payment due on October 1, 1982, alleging that appellees assured him that Dirksen would be off the property by May 1, 1982, and that appellees' failure to deliver the entire leased premises constituted a material breach of the lease and excused any duty of counter-performance on appellants' part. The trial court held, however, that appellees' failure to deliver the entire parcel, as called for in the written lease, did not constitute a breach of the lease. We disagree.

■ The written lease agreement involved in the instant action stated in pertinent part that: "The lessor ... has leased ... The West Half of Section 12, Township 117 North, of Range 60 West of the 5th P.M." The agreement further states that "[l]essor covenants that the lessee, upon paying the rents and performing the covenants of this lease, shall peacefully and quietly have, hold and enjoy the rented premises for the term of this Lease." This statement constitutes an express covenant of quiet enjoyment. "The legal implication of the covenant, express or implied, is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights reserved to the lessor." *Checker Oil Co., Etc. v. Harold H. Hogg, Inc.*, 251 Pa.Super. 351, 380 A.2d 815, 818 (1977) *citing* 2 Thompson on Real Property § 1129, p. 471 (1961) and *Kelly v. Miller*, 249 Pa. 314, 94 A. 1055 (1915).

As to whether appellees' failure to deliver the entire parcel called for in the written agreement constituted a breach of the lease, the trial court stated in its memorandum opinion:

> It was understood by the parties at that time the lease was entered into that there were certain acres occupied by buildings and trees that would not be farmable. At trial Defendant claims there should be a prorated reduction for 30 acres. However, it appears to the Court that such untillable acres had already been taken into consideration by the parties when the amount of the lease payment was agreed upon and Defendant will be allowed no further setoff.

SDCL 53–8–5 states that "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations con-

cerning its matter which preceded or accompanied the execution of the instrument." We summarized the nature and effect of this rule in *Northwestern Pub. Serv. Co. v. Chicago & N.W. Ry. Co.*, 87 S.D. 480, 484, 210 N.W.2d 158, 160 (1973), stating:

> It is ... well settled that parol evidence is inadmissable to vary, contradict or add to a contract which has been reduced to a writing that is clear, definite and complete, and in the absence of fraud, mistake or accident, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract.

*See also Flynn v. Flynn*, 338 N.W.2d 295 (S.D.1983); *McCollam v. Littau*, 307 N.W.2d 144 (S.D.1981); *Jensen v. Pure Plant Food Intern., Ltd.*, 274 N.W.2d 261 (S.D.1979); *Renner Elevator Co. v. Schuer*, 267 N.W.2d 204 (S.D.1978).

In *Vaughn v. Rosencrance*, 73 S.D. 36, 38 N.W.2d 822 (1949), an action for specific performance of a land sales contract, the execution of the contract was preceded by written correspondence regarding the terms of sale. This court refused to supplement or modify the written sales contract with the related correspondence stating that "[t]hese preliminary negotiations were consummated by the written agreement which 'supersedes all previous understandings, and the intent of the parties must be ascertained therefrom', except, of course, in cases involving fraud, mistake or ambiguity." 73 S.D. at 39, 38 N.W.2d at 823, *citing* 17 C.J.S., Contracts, § 322 (1963). *See also Kuhfeld v. Kuhfeld*, 292 N.W.2d 312 (S.D.1980); *Berry v. Benner*, 81 S.D. 610, 139 N.W.2d 285 (1966); *Kindley v. Williams*, 76 S.D. 225, 76 N.W.2d 227 (1956); *Moncur v. Jones*, 72 S.D. 202, 31 N.W.2d 759 (1948); *Stoefen v. Brooks*, 66 S.D. 587, 287 N.W. 330 (1939); *Farmers Mutual Hail Ins. Co. of Iowa v. Fox Turkey Farms*, 301 F.2d 697 (8th Cir.1962).

Regarding an exception to this rule, we stated in *Habeck v. Sampson*, 88 S.D. 437, 441–42, 221 N.W.2d 483, 486–87 (1974), that:

> Although the execution of a written contract supersedes all preceding oral ne-

gotiations or stipulations, SDCL 53–8–5; *Skjoldal v. Myren*, 86 S.D. 111, 191 N.W.2d 809 [(1971)], parol evidence is admissible to explain a written contract that is uncertain or ambiguous. *Christiansen v. Strand*, 81 S.D. 187, 132 N.W.2d 386 [(1965)]; *Eggers v. Eggers*, 79 S.D. 233, 110 N.W.2d 339 [(1961)].

■ A writing is ambiguous when it is reasonably capable of being understood in more than one sense. *Titsworth v. Hanzlik*, 397 F.Supp. 433 (S.D.S.1975). The written lease agreement in the instant action is patently clear. Under the terms of the agreement, appellants were to receive one-half section of farm land "and enjoy the rented premises for the term of [the] Lease." Accordingly, we conclude that the trial court's admission of the contemporaneous understanding between the parties, that certain acres would not be farmable, constituted reversible error.

■ Appellants' claim that approximately thirty acres were unfarmable. This constitutes a partial failure of consideration. As to such failure, in *Ralston Purina Company v. Jungers*, 86 S.D. 583, 587, 199 N.W.2d 600, 603 (1972), this court cited *United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir.1963), for the proposition that " '[a] partial failure of consideration does not excuse performance by the other party to a contract or give him a right of rescision. Such failure is merely ground for abatement of damages unless it goes to the root of the contract.' Inasmuch as the unfarmable acreage was a relatively small portion of the entire half-section, as a failure of consideration, it did not go 'to the root of the contract.' " Accordingly, we remand to the trial court to determine the abatement of appellees' damages, if any, with consideration given for the partial loss of the use of the farmstead, and for the loss of the full use of the irrigation system.

All the Justices concur.