**Margo HEINERT, Plaintiff and Appellee,**

v.

**HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF SIOUX FALLS, Successor to 1st Dakota Home Savings and Loan Association, Defendant and Appellant.**

**No. 16485.**

Supreme Court of South Dakota.

Argued May 23, 1989.

Decided Aug. 2, 1989.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiff and appellee.

Mark V. Meierhenry of Meierhenry & Meierhenry, G.J. Danforth, Jr. of Danforth, Danforth & Johnson, Sioux Falls, for Home Federal Sav. and Loan Ass'n, appellant.

WUEST, Chief Justice.

Appellee, Margo Heinert (Margo), brought an action against appellant, Home Federal Savings and Loan Association (Home Federal), alleging that Home Federal had failed to provide credit life insurance to her and her now deceased husband, Harold Heinert (Harold), pursuant to an insurance provision in a loan disclosure statement. After a jury returned a verdict favoring Margo, the trial court entered a judgment against Home Federal, ordering

it to pay Margo the sum of $40,186.79 plus interest and costs in the amount of $24,-899.12. We affirm the trial court's decision.

On April 3, 1978, Margo and Harold met with Robert Carr (Carr), a loan officer at First Dakota Home Savings and Loan (First Dakota) * in Winner, South Dakota. The purpose of this meeting was to close a loan which Margo and Harold had obtained from First Dakota so that they could purchase a home in Mission, South Dakota. Margo and Harold signed a variety of documents, including a promissory note and a real estate mortgage. After signing these documents, they were presented a loan disclosure statement which later constituted the basis for Margo's claim. This disclosure statement had two parts. The first part provided Margo and Harold with notice of the credit terms, thereby complying with the Truth in Lending Act. *See* 15 U.S.C. § 1601, *et seq.* (1982). The second part of the disclosure statement regarded property and "other" insurance. Under the heading of "OTHER INSURANCE," the document stated:

Credit life, accident, health or loss of income insurance is not required to obtain this loan. No charge is made for such insurance and no such insurance is provided unless the borrower signs the appropriate statement below.
Credit life (Mortgage balance) is available at a cost of $ 8.80 for the each
    (type of insurance)
month year term of the initial policy.
I desire assume other for now insurance coverage.
4/3/78    (s) Harold Heinert
  Date    Signature
I DO NOT desire such insurance coverage.
4/3/78    ‾‾‾‾‾‾‾‾‾‾‾‾
  Date    Signature

The words "assume other for now" were hand written and were admittedly placed in the blank by Carr. However, there was some dispute as to when those words were placed in the blank. Home Federal alleges that those words were written into the blank before Harold signed beneath it. Margo, however, contends that those words were not present when Harold signed the document.

At the loan closing, Harold indicated to Carr that he and Margo would assume the previous home owners' casualty insurance until they could obtain their own. Harold subsequently informed Carr that such casualty insurance had been obtained.

The Heinert's started making monthly payments in the total amount of $426. The monthly mortgage payment, in and of itself, constituted $352.11 of this total amount. Payments for interest and escrow were added on to the monthly mortgage payment. The Heinerts received an annual statement of their loan account which listed payments made on principal, interest and escrow. No charge was shown for credit life insurance.

In 1984, Harold was diagnosed as having cancer. Shortly thereafter, Margo inquired about processing a claim to obtain the proceeds from the credit life insurance. Home Federal indicated to her that no such insurance was in effect. When Harold died on February 13, 1985, the outstanding balance on the mortgage was $40,186.79.

On appeal, Home Federal essentially contends that the issue to be resolved in this case is whether a contract for insurance had been created between the parties. Home Federal has argued to this court that such a contract can not possibly exist under the circumstances of this case because the requisite elements for a contract to insure, as provided by SDCL 52–11–2, are not present. We agree with Home Federal in that we do not believe a "contract for insurance" had been created. This, however, is not to say that a contract did not exist at all between the parties. We believe that a contract was, in fact, created between the parties in which Home Federal

* Sometime after the Heinerts obtained their loan from First Dakota, its assets and liabilities were assumed by Home Federal.

agreed to procure credit life insurance for Harold Heinert in exchange for his acceptance of the obligation to pay the premiums for such insurance.

According to South Dakota law, a contract is an agreement to do or not to do a certain thing. SDCL 53-1-1. Elements that are essential to the existence of a contract are as follows: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) sufficient cause or consideration. SDCL 53-1-2. Elements one and three are clearly present in this case and can be disposed of without discussion. Elements two and four, however, are not as clear, and hence the establishment of these two elements requires some discussion.

As to the element of consent, we believe that Home Federal, through the "other insurance" clause, essentially agreed to procure credit life insurance for Harold if Harold would sign a particular statement, thus obligating himself to pay for such insurance. The "other insurance" clause states that "no charge is made for such insurance and no such insurance is provided unless the borrower signs the appropriate statement." The clear import of this language is that the borrower (Harold) would be provided and charged for "such" insurance if he signed the appropriate statement. Since Harold signed the appropriate statement, one would naturally conclude that Home Federal then had an obligation to procure "such" insurance.

This court does not deny that some portions of this contract are unclear and ambiguous. The second sentence of the "other insurance" clause, noted in the preceding paragraph, is particularly unclear in that it does not specifically state which such insurance would be provided if the borrower signed the appropriate statement. The first sentence of the "other insurance" clause lists four different types of insurance that could be provided, including credit life insurance. A contract, however, must be construed as a whole, and not just a detached portion of it. *Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980); *City of Sioux Falls v. Henry Carlson Co., Inc.*,

258 N.W.2d 676 (S.D.1977); *Bedell v. Steele*, 71 S.D. 609, 28 N.W.2d 369 (1947). The final sentence of the "other insurance" clause specifically notes the premium costs for credit life insurance. The premium costs for the other three types of insurance offered under this clause were not so noted. This fact, when construed in light of the clear meaning of the second sentence of the "other insurance" clause, strongly supports the conclusion that the parties intended to enter into a contract to procure credit life insurance.

The "assume other for now" language in this contract also serves to make the contract uncertain and ambiguous. A writing is ambiguous when it is reasonably capable of being understood in more than one sense. *Quick v. Bakke, Kopp, Ballou & McFarlin, Inc.*, 380 N.W.2d 364 (S.D.1986); *Carr v. Benike, Inc.*, 365 N.W.2d 4 (S.D. 1985). The writing in this case is reasonably capable of being understood in more than one sense. The "assume other for now" language might reasonably be understood to mean that Harold was going to assume someone else's insurance rather than take the insurance offered in the "other insurance" clause. This, of course, presumes that such language was on the contract when Harold signed it. On the other hand, the writing states that the insurance listed in the "other insurance clause" would be provided to Harold if he signed the appropriate statement. As Harold signed the statement, one might reasonably understand this to mean that Harold wanted to obtain the insurance listed in the "other insurance" clause.

The court believes the writing is ambiguous. Where an ambiguous contract exists, it should be interpreted most strongly against the one who drafted the contract and caused the uncertainty to exist. *City of Sioux Falls v. Henry Carlson Co., Inc.*, 258 N.W.2d 676 (S.D.1977); *Weisser v. Kropuenske*, 55 S.D. 558, 226 N.W. 760 (1929). Home Federal was the drafter of this contract and it was Home Federal's agent who added the "assume other for now" language, thus making the contract uncertain and ambiguous. For this reason, we interpret the contract most strongly

against Home Federal, and uphold the jury's verdict that the parties did consent to enter into a contract in which Home Federal was to procure credit life insurance for Harold. This conclusion is further supported by our previous statement that a contract should be construed to effectuate valid contractual relations rather than in a manner which would render the agreement invalid or render performance impossible. *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312 (S.D. 1980); *Trumbauer v. Rust*, 36 S.D. 301, 154 N.W. 801 (1915).

Home Federal argues that the language in the insurance clause was not designed to be an offer to procure insurance. Rather, Home Federal contends that the language of the insurance provision was merely a part of the Regulation Z disclosure statement. Home Federal alleges that the purpose of this whole document was to disclose costs involved in the loan, thus complying with the Truth in Lending Act. As such, Home Federal contends that the language was not designed to be an offer to procure insurance. We believe that this proposition is not important for the resolution of this case. In *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn. App.1981), the Tennessee Court of Appeals addressed an issue which was similar to that presented to us in the present case. The Court of Appeals stated:

> Neither the Truth in Lending Act nor Regulation Z adopted pursuant thereto prescribe a particular form to be used in compliance therewith. The disclosure form used by the defendant bank was of its own choosing. Further, neither the Act nor Regulation Z prohibit matters other than a disclosure of credit terms from being incorporated in the disclosure statement. For example, a promissory note, security agreement and disclosure of credit terms may all be incorporated in a single instrument. We therefore hold that a loan disclosure statement may contain an offer to procure credit insurance as well as notice of credit terms given pursuant to the Truth in Lending Act.... [W]hether the form was one designed to comply with the Act or not is unimportant; the basic issue being whether the language used by the defendant in its disclosure statement constituted an offer to procure credit insurance. *Id.* at 529–30.

We believe that the language in the "other insurance" clause constituted an offer to procure credit life insurance for Harold Heinert. As the Tennessee Court of Appeals stated above, it is not important whether the form was one designed to comply with the [Truth in Lending] Act. The fact remains that the language used by Home Federal constituted an offer to procure credit life insurance. Any insurance information required to be disclosed could have been disclosed without the use of such contractual language. We must conclude, therefore, that when Harold signed the appropriate statement, Home Federal's offer to procure credit life insurance had been accepted. Hence, consent did exist between the parties.

The final element which needs to be established in order to prove the existence of a contract is the element of sufficient cause or consideration. In this contract, mutual promises were made. Home Federal promised to procure credit life insurance for Harold and, in exchange, Harold promised to pay for such insurance. Generally, where mutual promises are made, each furnishes a sufficient consideration to support an action of the other. *Overboe v. Overboe*, 160 N.W.2d 650 (N.D.1968). Furthermore, this court has previously stated that a promise to pay constitutes consideration. *State v. Murphy*, 74 S.D. 21, 48 N.W.2d 225 (1951). Therefore, we conclude that there was sufficient consideration to support a contract between the parties.

■ All of the elements needed to establish the existence of a contract are present in this case. Through this contract, Home Federal became obligated to procure credit life insurance for Harold Heinert. This contract was not a contract for insurance, and hence, the fact that the elements needed to establish a contract for insurance are not present in this case is irrelevant. For these reasons, we uphold the jury's decision that a contract did exist between the

parties in this case, and that Home Federal's failure to procure insurance for Harold Heinert amounted to a breach of that contract.

Finally, we address Home Federal's liability for its failing to procure credit life insurance. In *Lindsay v. Pettigrew*, 5 S.D. 500, 59 N.W. 726 (1894), this court stated that one who expressly agrees "to procure insurance, and unjustifiably fails to secure the same or make an effort in that direction, thereby assumes the risk and becomes liable, in case of loss, to pay as much of the same as would have been covered by the insurance policy ... provided the same had been procured as directed." *Id.* at 503, 59 N.W. at 727. Accordingly, Home Federal is liable to Margo for the amount of the mortgage as of the date of Harold's death.

For the foregoing reasons, the judgment of the trial court is affirmed.

All the Justices concur.