Steven J. **CLEMENTS** and Pamela D. Clements, Plaintiffs and Appellees,

v.

Erma R. **GABRIEL** and Raymond E. Gabriel, Defendants and Appellants.

No. 17025.

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 1990.

Decided June 26, 1991.

Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for plaintiffs and appellees.

Wayne F. Gilbert of Bangs, Johnson, Johnson, Colbath & Huffman, Rapid City, for defendants and appellants.

MILLER, Chief Justice.

Defendants appeal from a judgment entered against them in a jury verdict in a suit for breach of contract. We affirm.

### FACTS

On August 5, 1985, the Clements and Gabriels entered into a contract whereby the Clements agreed to manage the real property, livestock, equipment and personal property owned by Gabriels. In exchange, the Clements were authorized to run forty-five head of cattle they owned along with four hundred head of cattle to be provided by Gabriels upon Gabriels' ranch. Furthermore, the parties agreed to split the proceeds from the sale of the combined herd on a sixty/forty basis after the expenses of operation were deducted. The agreement was drafted by Gabriels' attorney, Louis Freiberg, after a meeting at Gabriels' residence.

A dispute developed between the parties culminating in this suit wherein the Clements allege that Gabriels breached the agreement by retaining more calves than they were entitled to, by paying for goods which were not ranch expenses, and by refusing to pay the Clements their share of the receipts from calves sold in October, 1988. Gabriels denied that they breached the agreement and further counterclaimed for moneys they claimed the Clements owed them.

The jury awarded the Clements damages of $50,853.00. (It also ruled against Gabriels on their counterclaim.) The trial court adjusted the amount and entered judgment for $48,562.00, prejudgment interest in the amount of $5,940.84, and costs. This appeal followed.

## ISSUE I

WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT A PORTION OF THE AGREEMENT WAS AMBIGUOUS.

■ The trial court determined that the contract was ambiguous with respect to the division of replacement heifers, and so instructed the jury.[1]

6L The agreement, *inter alia*, provided: Notwithstanding any other provision in this Agreement, no replacement heifers shall be provided for original stock cows sold by either party belongin[g] to them without the agreement of all parties hereto. It is the understanding between the parties that stock cows sold because they are no longer desirable or fit for stock cows will be replaced with replacement heifers from calves raised but these replacement heifers will only replace stock cows sold upon agreement of the parties hereto during the term of this Agreement.

Furthermore:

After the payment of all expenses for the ranch as herein provided, funds remaining from the sale of livestock of calves each year shall be divided 60% to Gabriels and 40% to Clements. Clements shall at all times provide one bull. If any of the initial cows of Clements are sold they will be replaced by one heifer, from the ranch herd and if any of the original cows of Gabriel's (sic) are sold they shall be replaced by [a] replacement heifer from the ranch herd.

The Clements argue that under the agreement any replacement heifer retained to replace a stock cow could be retained *only* by the agreement of the parties. The Clements assert that under Gabriels' interpretation of the agreement Gabriels could have sold all of the stock cows and retained every single heifer to replace them with or without the consent of the Clements.

"The question of whether a contract is ambiguous is a question of law for the court." *Buhl v. Bak,* 400 N.W.2d 903, 906 (S.D.1987). "A writing is ambiguous when it is reasonably capable of being understood in more than one sense." *Carr v. Benike, Inc.,* 365 N.W.2d 4, 6 (S.D.1985); *City of Sioux Falls v. Henry Carlson Co.,* 258 N.W.2d 676 (S.D.1977).

The provisions requiring the division of replacement heifers on a sixty/forty basis are unclear. What the parties intended is subject to debate. Here, the trial court concluded that the agreement was ambiguous with respect to the division of the retained heifer calves and so instructed the jury. We agree. In our view, the agreement is patently ambiguous and confusing on this issue.

## ISSUE II

WHETHER THE COURT ERRED IN INSTRUCTING THE JURY THAT AN AMBIGUOUS AGREEMENT IS CONSTRUED AGAINST THE PARTY DRAFTING THE AGREEMENT.

■ As noted earlier, Attorney Freiberg, *who was present at the meeting between the Clements and Gabriels* when the agreement was discussed, drafted the agreement. Mr. Freiberg represented Gabriels. (In fact, he testified that before he arrived, Mrs. Gabriel had written an outline of the agreement.) Later, the Clements had the agreement reviewed by their attorney Thomas C. Adam, who proposed changes to the Clements, including eliminating a section on the costs of prairie dog eradication and a hold-harmless clause. Freiberg testified that he was not aware of Adam's involvement until in the third year of the contract, when he first became aware of the parties' trouble in interpreting it.

The trial court instructed the jury as follows:

1. Instruction No. 20 provides:
 The Court has determined that the written contract in evidence in this case is ambiguous with respect to the division of replacement heifers. The agreement may consist of both

written and oral promises and understanding. The oral portions of the agreement may be enforced and damages awarded for breach thereof, just as though those portions had appeared in the written agreement.

Where a contract is ambiguous, it is interpreted most strongly against the party who drafted the contract and caused the uncertainty to exist.

Gabriels assert that this rule has no application to this case. They argue that the rule allowing construction of an ambiguous agreement against the drafter· is intended to adjust for an inequality in bargaining power which existed between the parties. *Atwater Creamery Co. v. Western Nat'l. Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn. 1985). They suggest that neither party had any advantage in bargaining power over the other (especially since Adam reviewed the document for the Clements) and thus the rule construing ambiguities against the party who drafted them has no application. We disagree.[2]

"Ambiguities arising in a contract should be interpreted and construed against the *scrivener.*" *Forester v. Weber*, 298 N.W.2d 96, 97 (S.D.1980) (emphasis added), (*citing Henry Carlson Co., supra*). This is a rule of *construction* to be applied against one who drafted an ambiguous contract. *Weisser v. Kropuenske*, 55 S.D. 558, 561, 226 N.W. 760, 761 (1929). The rule of construction does not change because the Clements' attorney reviewed the document.

Any doubts arising from an ambiguity of language in a contract should be resolved against the speaker or writer, because they can by exactness of expression more easily prevent mistakes in meaning than the one with whom they are dealing. *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 152 (S.D.1986); *Henry Carlson Co., supra*. The trial court correctly instructed the jury.

## ISSUE III

WHETHER PREJUDGMENT INTEREST WAS PROPERLY AWARDED TO THE CLEMENTS.

 Gabriels argue that prejudgment interest was improper in this case. They note that the Clements' amended complaint did not even seek a sum certain in money damages.

The Clements' claim during the trial was $69,236.75. That claim can be summarized as follows:

| | |
|---|---:|
| Amount owing on Agreement, 1988 | $25,448.53 |
| Interest | 5,277.97 |
| Ranch expenses/ASCS | 1,258.39 |
| Disputed expenses | 10,371.86 |
| Calf shortage | 10,400.00 |
| Retained calves | 16,480.00 |
| Total | $69,236.75 |

The jury returned a verdict in the amount of $50,853.00, and judgment was ultimately entered in the amount of $48,562.00. The record is silent as to why the trial court reduced this amount. The trial court then calculated the prejudgment interest to be $5,940.87.

Gabriels argue that the damages had no way of being calculated or determined until the jury determined them. They claim that Clements' damages were based on estimates and approximations. The Clements respond, asserting that they submitted specific claims for the breach. They further allege that the books and records reflecting the amounts owed to the Clements were in possession of Gabriels and only after discovery and request for production of documents were these records available to the Clements in order to enable them to calculate their damages.

SDCL 21–1–11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon ·from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

In *Beka v. Lithium Corp. of America*, 77 S.D. 370, 92 N.W.2d 156 (1958), wherein we upheld the award of prejudgment interest, we stated:

The reason for denying interest on a claim is that where the person liable does not know what sum he owes, he cannot

---

**2.** The dissent states that "Freiberg cannot be characterized as having taken advantage of Adam." We agree. However, Gabriels had the advantage over Clements in that Freiberg (Gabriels' attorney) was present at the meeting *and* was the actual scrivener of the contract.

be in default for not paying. When the exact sum of the indebtedness is known or can be readily ascertained the reason for the denial of interest does not exist. 77 S.D. at 375, 92 N.W.2d at 159–60. Furthermore, "[i]t seems clear from these cases that the instances in which interest will be denied have been progressively restricted by a liberal application of the rule." 77 S.D. at 376, 92 N.W.2d at 160.

The prevailing party is entitled to prejudgment interest only if damages are certain or capable of being made certain by calculation; prejudgment interest is not to be awarded if the damages are uncertain until determined by the trier of fact. *First Nat. Bank of Minneapolis v. Kehn Ranch, Inc.*, 394 N.W.2d 709 (S.D.1986); *Twin City Testing & Eng'g Lab., Inc. v. Smith*, 393 N.W.2d 456 (S.D.1986).

In *Heer v. State*, 432 N.W.2d 559, 568–69 (S.D.1988), Justice Sabers (concurring in part and dissenting in part) noted "[t]he right to prejudgment interest under SDCL 21–1–11 is not determined by the amount claimed in the complaint, the amended complaint, or even the amount determined in the verdict." (Citation omitted.) Further, "even though damages may be unliquidated, if readily ascertainable values exist for damaged or destroyed property, 'the general and better considered rule is to allow interest, at least in the absence of strong equities to the contrary.'" *Id.* (citations omitted). Finally, "[i]t is unnecessary that the defendant actually know the amount owed. If the defendant can compute the amount from 'reasonably available information,' the court should award prejudgment interest." *Id.* (citations omitted).

In *Amert v. Ziebarth Constr. Co.*, 400 N.W.2d 888 (S.D.1987), Amert brought suit seeking $95,505.00 in damages. The complaint was amended shortly before trial to $141,543.09, and then, on the day of trial, amended back to $95,505.00. Therein we determined that the amount of damages was capable of being determined even though Amert's claim fluctuated before, and even during, trial. The same situation exists here.

The fact that the jury returned a verdict at variance with the complaint and the Clements' claim at trial is not determinative of their entitlement to prejudgment interest. *Amert, supra.* The Clements submitted specific claims for the breach, and Gabriels had possession of books containing records which held the information concerning the amounts owed. If Gabriels had wanted to, they could have ascertained the amount they owed to the Clements by merely looking at their records. *Hageman v. Vander Vorste*, 403 N.W.2d 420 (S.D.1987).[3] Thus, we hold that the trial court did not err in allowing prejudgment interest.

Affirmed.

MORGAN, Retired Justice, concurs.

SABERS, J., concurs specially.

WUEST, J., concurs in part and dissents in part.

HENDERSON, J., dissents.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

SABERS, Justice (specially concurring).

I take issue with some of the language in the dissent, including: "conceptual folly," "preposterous conclusion," "academic violence" and "highly prejudicial." Such phrases seem exaggerated.

Specifically, the dissent claims that "this contract was approved by both of these lawyers; if the contract is ambiguous, both lawyers were involved in creating an ambiguity." This statement implies that the ambiguity was the result of a joint effort by both lawyers. That simply is not true.

Even the dissent admits that "[d]ue to the input of Attorney Adam, ... two provisions of the draft were deleted." The fact is that the two deletions have nothing whatsoever to do with the ambiguity. The ambiguity, which remained in the contract after the deletions, was created by the draftsman, attorney Freiberg, and the trial

**3.** *See* Comment, Prejudgment Interest in South Dakota, 33 S.D.L.Rev. 484 (1988).

court was required to follow the law and instruct the jury that the ambiguity should be "interpreted most strongly against the party who drafted the contract and caused the uncertainty to exist." *See Forester v. Weber*, 298 N.W.2d 96, 97 (S.D.1980).

Secondly, the dissent claims that "SDCL 21-1-11 ... has been shattered by the *Amert* and *Hageman* decisions," that "*Beka* ... has been torn asunder by *Amert* and *Hageman*" and that "[t]he *Amert* decision ... is bad law." *Amert v. Ziebarth Const. Co.*, 400 N.W.2d 888 (S.D.1987), was written by then Chief Justice Wuest. Both *Amert* and *Hageman* were unanimous, except for Justice Henderson's dissents and my special concurrence in *Amert* concerning "the continuing problem of applying prejudgment interest law, SDCL 21-1-11, to the facts." 400 N.W.2d at 892 (Sabers, J., specially concurring).

> First, the law is known but difficulties continue to exist in applying that law to the multiple and diverse facts which arise from time to time in these cases. Secondly, in the absence of an offer or tender to pay on their part, defendants should not be able to claim that they are prevented by law or by the plaintiff creditor from paying. Thirdly, the right to recover damages capable of being made certain by calculation was not vested in the plaintiff in this case until September 28, 1982, and then in the amount of $95,505. This is so even though the building was built in 1977 and 1978 and the rust was noticed as early as the spring of 1979. At that time, plaintiff's damages were capable of being made certain by calculation by reference to prevailing markets for labor and materials. All of the above is in line with the letter and the spirit of *Meyer v. Dixon*, 369 N.W.2d 658 (S.D.1985).

*Id.*

Finally, the prejudgment interest law as applied in this case accomplishes its purpose to "provide full compensation for an injured party" and to place the defendants in "the same position as if they had paid damages at the time the damages occurred." Comment, *Prejudgment Interest in South Dakota*, 33 S.D.L.Rev. 484, 510 (1988).

WUEST, Justice (concurring in part and dissenting in part).

I would reverse and hereby join that portion of Justice Henderson's writing which holds the trial court erred in giving the instruction "[w]here a contract is ambiguous, it is interpreted most strongly against the party who drafted the contract and caused the uncertainty to exist."

On the other two issues, I agree with the majority opinion.

HENDERSON, Justice (dissenting).

Both the Clements and the Gabriels were represented by counsel when the contract was written. Counsel for each party had an opportunity to review the writing. Attorney Adam, representing the Clements, thoroughly reviewed the contract. The written agreement in question was drafted following a dinner meeting at which all parties, together with Attorney Freiberg, were present. True, Attorney Freiberg drafted the contract, but in accordance with the information he received from the Clements and Gabriels. Due to the input of Attorney Adam, who reviewed the contract, two provisions of the draft were deleted. This type of procedure is very common in the practice of law. It is conceptual folly to therefore assume that there existed an inequality of bargaining power between these parties. To suggest otherwise is to totally discount Attorney Adam's participation in drafting the agreement, which is a preposterous conclusion. The entire purpose of construing an ambiguous agreement against a drafter thereof is intended to adjust for an inequality of bargaining power existing. *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 277 (Minn.1985).

The majority states: "The rule of construction does not change because the Clements attorney reviewed the document." I strongly disagree with this language, as does a vast number of other jurisdictions who have encountered this issue. *See, Homac, Inc. v. DSA Financial*

*Corp.*, 661 F.Supp. 776 (E.D.Mich.1987) (The justification for applying such a rule pales in a situation where the terms of an agreement resulted from a series of negotiations between experienced drafters); *Spatz v. Nascone*, 368 F.Supp. 352 (W.D.Pa.1973); *Consumers Ice Company v. United States*, 475 F.2d 1161, 201 Ct.Cl. 116 (1973); *Kaiser Aluminum & Chemical Corporation v. United States*, 388 F.2d 317, 181 Ct.Cl. 902 (1967); *Carter v. Certain-Teed Products Corp.*, 200 F.2d 754 (8th Cir.1953); *United States v. Continental Oil Company*, 237 F.Supp. 294 (W.D.Okl.1964) ( … exception is where a contract is the result of the joint efforts of attorneys or negotiators, then it is not to be construed against either party); *Kinney v. Capitol–Strauss, Inc.*, 207 N.W.2d 574 (Iowa 1973); *Beck v. F.W. Woolworth Co.*, 111 F.Supp. 824 (N.D. Iowa 1953) (that rule is likewise inapplicable where the instrument is prepared with the aid and approval, and under scrutiny of legal counsel for both of the contracting parties); *Centennial Ent., Inc. v. Mansfield Dev. Co.*, 193 Colo. 463, 568 P.2d 50 (1977); *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979) (general rule, interpretation against the draftsman, has less force when the other party has taken an active role in the drafting process, or is particularly knowledgeable.) In sum, where all parties to a contract are knowledgeable, there is no reason for imposing sanctions against either party.

Adam is a very good lawyer; so is Freiberg. Both have been prominent lawyers in this state for many years; in point of fact both have served together on the State Board of Bar Examiners for many years. This Board is responsible for administering the State Bar Examination and grading the Bar Examinations. Both of these lawyers for many years have graded essay questions so it can be assumed that they are highly competent attorneys.[1] Again, I repeat, this contract was approved by both of these lawyers; if the contract is ambiguous, both lawyers were involved in creating an ambiguity.

There is not one scintilla of evidence to suggest that the Gabriels offered this contract to the Clements on a "take it or leave it basis." *See Hicks v. Brookings Mall Inc.*, 353 N.W.2d 54, 56 (S.D.1984). Under the facts of this case, the old time honored rule construing ambiguities against the drafter simply has no application. Unfortunately, the majority opinion has misconstrued the application of this time honored rule because the Gabriels (through attorney Freiberg) should not be characterized as the drafters. Freiberg cannot be characterized as having taken advantage of Adam. The contract in question was the result of both Freiberg's and Adam's efforts, acting for their clients, and should not be construed against either party.[2] To suppose otherwise, and to hold otherwise, is to do academic violence to the majority rule in the United States as reflected by the seven authorities I have cited above. Lawyers, in tens of thousands of offices, daily have their secretaries type contracts, which result from give and take situations with their respective clients (meeting of the minds). Surely, simply because the contract is typed in one lawyer's office after there has been joint effort and conferences by the parties with their counsel, does not turn the geographic location of the contract into the "scrivener's" office. It is reversible error to instruct the jury on this rule because it was highly prejudicial in the jury instructions, to the Gabriels. It appears

1. Under SDCL 19–10–2, judicial notice may be taken of public records. *See also, Nauman v. Nauman*, 336 N.W.2d 662 (S.D.1983). I take judicial notice of records within the Unified Judicial System. Attorney Adam was first appointed on January 1, 1981; his appointment expired January 1, 1991; Adam served as Chairman from January 1, 1984, until the expiration of his appointment. Attorney Freiberg served with Attorney Adam from January 1, 1983, and Freiberg's appointment expires January 1, 1992.

2. Surely, the Clements would not have signed this agreement had Attorney Adam advised against it. It is preposterous to say, under these circumstances, that Freiberg and his client took advantage of Clements and their attorney. Once Adam looked over the contract and made revisions, which were adopted by all parties, the contract expressed the agreement of all the parties.

the jury was tacitly directed to find in favor of the Clements in all their claims.

Nor do I agree with the trial court's establishing prejudgment interest on a reduced judgment, totally silent as to the rationale of the trial court reducing the verdict. As a member of the reviewing court, am I not entitled to know why the trial court reduced the verdict? The *Amert* decision, cited in the majority opinion, is bad law. Fluctuating claims for damages are, inherently, not certainty. Contrariwise, they are uncertainty. I dissented in *Amert* because of the conflicting demands of the plaintiff. True to my previous expressions, I dissent here because of the total uncertainty of the Clements' demands. During discovery, the Clements characterized their damage claim as "roughly $50,766.04." During trial, the Clements contended they had $69,236.75 coming; the jury verdict was $50,853.39; an amended complaint lodged by the Clements failed to seek a certain damage amount in terms of dollars and cents; finally the coup de grace, is that the trial judge, without any explanation, lopped off over $2,000.00 of the jury's verdict.[3] SDCL 21–1–11, requiring the damages be certain or capable of being made certain by calculation, which is vested in him on a particular day, before pre-judgment interest may be awarded, has been shattered by the *Amert* and *Hageman* decisions. If a defendant in any given case, does not know what sum he owes; or if a plaintiff has variant figures of claimed damages before the trial, during the trial and after the trial, how can it be reasoned that defendant is responsible on a certain date, for a given amount of money upon which fixed interest would bear? It is this simple: if the indebtedness is not known or cannot be readily ascertained, an affixation of interest, as of a certain date, is pure conjecture. *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 874 F.2d 550 (8th Cir.1989); *Van Dyke v. Coburn Inters., Inc.,* 873 F.2d 1094 (8th Cir.1989); *Heer v.*

*State,* 432 N.W.2d 559 (S.D.1988); *First Nat'l. Bank v. Kehn Ranch, Inc.,* 394 N.W.2d 709 (S.D.1986); *Twin City Testing En'g. Lab., Inc. v. Smith,* 393 N.W.2d 456 (S.D.1986); *Winterton v. Elverson,* 389 N.W.2d 633 (S.D.1986); *Cargill, Inc. v. Elliott Farms, Inc.,* 363 N.W.2d 212 (S.D.1985); *Arcon Constr. Co. v. S.D. Cement Plant,* 349 N.W.2d 407 (S.D.1984). *Beka,* the old granddaddy of this Court, cited by the majority opinion, has been torn asunder by *Amert* and *Hageman.* In *Beka,* interest was allowed on damages for breach of contract because the contractors' testimony was uncontradicted.

I fully appreciate that there appears to exist some conflict in the decisions of this Court on pre-judgment interest. It is extremely difficult to apply SDCL 21–1–11 to each factual scenario. In the instant case, when the trial judge lopped off $2,000 of the jury's verdict, how can it be said that "damages certain" or "capable of being made certain" was "vested on a particular day?"

---

**3.** Generally speaking, Sabers, J., specially concurring, adds nothing to the academic effort of either the majority writer or minority writer. A legal bird, conceptualizing, might tweet as it ponders: The $2,000 lopped off, by the trial judge, without explanation, is not addressed by the special concurrence after rehashing recent holdings with approximately 300 words. Bird

flies away, still wondering. The special concurrence fails to realize the precise legal principle involved that there is no inequality of bargaining power—two lawyers representing two clients, both with an active role in the drafting process and an agreement that clients signed after attorneys have looked over the agreement.