CITY OF SIOUX FALLS, South Dakota,
a Municipal Corporation, Plaintiff
and Appellant,

v.

HENRY CARLSON COMPANY, INC.,
Defendant and Respondent,

and

Ron M. Fiegen, Inc., Defendant
and Respondent.

No. 11805.

Supreme Court of South Dakota.

Opinion Filed Oct. 20, 1977.

Richard W. Sabers of Dana, Golden, Moore & Rasmussen, Sioux Falls, for plaintiff and appellant.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and respondent Henry Carlson Company, Inc.

William G. Taylor, Jr., of Woods, Fuller Shultz & Smith, Sioux Falls, for defendant and respondent Ron M. Fiegen, Inc.

ZASTROW, Justice.

The City of Sioux Falls (City) has appealed from the trial court's determination denying its claim for refund of progress payments made to defendants Henry Carlson Company, Inc. (Carlson) and Ron M. Fiegen, Inc. (Fiegen) pursuant to a remodeling contract for the Sioux Falls Coliseum Annex prior to its destruction. We affirm.

In 1972, the City contracted with Carlson and Fiegen to remodel the Sioux Falls Coliseum Annex. The remodeling project was substantially completed when a fire destroyed the Annex on January 5, 1973. Before the fire, Carlson had received $61,529.40 on a contract total of $70,430, and Fiegen had received $4,976.58 on a contract total of $29,823 in the form of progress payments.

Following the fire, the City received $646,644.73 from its own fire insurance carrier for damages to the Coliseum and the Annex. Carlson received $8,906.48 from its own insurance carrier, and Fiegen received $23,320.03 from its insurance carrier.

After making demands upon the defendants and their insurance carriers, the City sued the defendants for refund of the progress payments, asserting that under the remodeling contract's provision requiring insurance, the defendants or their insurers were liable for any loss to the project work resulting from the fire. The defendants answered, denying the City's claim, stating that the City had been fully reimbursed by its own insurance carriers, and they counterclaimed for the balance of the contract price on their respective contracts. The case was tried to the court, and findings of fact and conclusions of law and judgment were entered holding that the City, having been fully compensated by its insurer, had no claim against the defendants, and that the defendants, likewise, had no claim against the City. Only the City appeals from the trial court's determination.

The questions presented by the City are: (1) Did the trial court err in failing to hold that all responsibility for maintenance of property insurance on the work and for payment of sums for damage arising out of all perils remained with the contractor until the work was complete and accepted in writing by the City? (2) Did the trial court err in receiving evidence concerning the City's own insurance policy? and (3) Did the defendants sustain their burden of proof that the City had been fully compensated for the fire loss?

The resolution of this appeal centers upon the interpretation of the contract's insurance provisions. The City's separate contracts with Carlson and Fiegen each contained the following clauses:

"11.3 PROPERTY INSURANCE:

"During the entire term of this Contract, the Owner shall maintain such insurance as he chooses on the existing part of the structure and its contents without benefit of the 'Alternation and Addition' provisions either a part of the policy or available by endorsement.

"However, all responsibility for maintenance of property insurance on the Work (including but not limited to Builders Risk and Installation Floaters) remains solely with the Contractor who shall insure the Work against loss arising out of fire or other perils, and all responsibility for payment of sums for damage arising out of all perils, insured or uninsured, including any deductible provisions of any policy, shall remain with the Contractor until the Work is complete and accepted in writing by the Owner.

"It is a condition of the Contract and it is hereby aggreed (sic) that the Owner, Architect/Engineer, and all Contractors, Subcontractors, and Sub-subcontractors

waive all rights of recovery against each other for damages caused by fire or other perils to the extent covered by any valid and collectible insurance, and further, that any policy not including the standard waiver of subrogation clause be so endorsed as to comply with this paragraph."

These clauses replaced those found in the AIA (American Institute of Architects) Document A201, 1970 Edition,[1] the form otherwise adopted by the City and made a part of the remodeling contracts.

The City concedes that if it had not modified these AIA provisions, it would have had to provide insurance coverage for the losses suffered by all parties from the fire. It is also obvious that had the City not maintained a policy which covered "alterations and repairs," the contractors would have been liable for the loss.

Under the contract provisions, the trial court determined:

## "CONCLUSIONS OF LAW

### I

"In accordance with Section 11.3 of the supplemental general conditions of the contract, the Plaintiff waived any right of recovery against the Defendant to the extent of any valid and collectible insurance in force on the date of the fire.

### II

"In accordance with Section 11.3 of the supplemental general conditions of the contract, the Defendant waived any right of recovery against the Plaintiff to the extent of any valid and collectible insurance in force on the date of the fire.

### III

"That Plaintiff is not entitled to recover on its Complaint and Defendant is not entitled to recover on its Counterclaim because each party had in full force and effect a valid and collectible policy of fire insurance on the date of the fire."

The crux of this appeal is whether the court properly determined the import of the provisions of Section 11.3. The appellant maintains that the court did not construe the provisions of Section 11.3 as a whole but only considered its last paragraph and, accordingly, wrongly concluded that each party waived the right to recover from each other. However, in doing so, the City emphasizes only the second paragraph of Section 11.3 and ignores the language of the last paragraph.

■ The trial court in determining the intention of the parties to a contract must take into consideration the entire contract and not just a detached portion. *Bedell v. Steele*, 1947, 71 S.D. 609, 28 N.W.2d 369;

---

1. The AIA forms provisions relating to insurance which were replaced were in part: "11.3 *PROPERTY INSURANCE* "11.3.1 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of Fire, Extended Coverage, Vandalism and Malicious Mischief. "11.3.2 The Owner shall purchase and maintain such steam boiler and machinery insurance as *may be required by the Contract Documents or by law*. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work. * * "11.3.4 The Owner shall file a copy of all policies with the Contractor before an exposure to loss may occur. If the Owner does not intend to purchase such insurance, he shall inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of himself, his Subcontractors and the Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by failure of the Owner to purchase or maintain such insurance and so to notify the Contractor, then the Owner shall bear all reasonable costs properly attributable thereto. "11.3.5 If the Contractor requests in writing that insurance for special hazards be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order. "11.3.6 *The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under this Paragraph 11.3, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee. The Contractor shall require similar waivers by Subcontractors and Sub-subcontractors in accordance with Clause 5.3.1.5.*"

*Eberle v. McKeown*, 1968, 83 S.D. 345, 159 N.W.2d 391. At the same time, it must be remembered that where an ambiguous contract exists,[2] it should be interpreted most strongly against one who drafted the contract and caused the uncertainty to exist. *Weisser v. Kropuenske*, 1929, 55 S.D. 558, 226 N.W. 760; *Evans v. Heaton*, 1930, 57 S.D. 436, 233 N.W. 281; *Jones v. American Oil Co.*, 1973, 87 S.D. 384, 209 N.W.2d 1.

■ Reading Section 11.3 in its entirety, we conclude that it is reasonably capable of being understood in more than one fashion. The defendants' position is: that each party must suffer any loss prior to the contract's completion to the extent that it has valid and enforcible insurance coverage; the appellant's position is: that the entire loss must be borne by the contractors, defendants. We conclude that the appellant's interpretation should not be adopted since it, as drafter of the document, caused the ambiguity to arise. Accordingly, we view the trial court's interpretation of this agreement to be proper.

■ Having determined the trial court's interpretation of the insurance provision to be correct, it logically follows that the City's insurance policy was relevant (and admissible) to determine whether it covered the City's loss arising from the destruction of the Annex. The City's policy by its terms provides coverage for loss by fire to alterations and repairs during the period of construction. Reaching this decision, we must determine whether sufficient evidence was introduced to prove whether the City had been fully compensated for the fire loss to the Coliseum, the Annex, and the remodeling work.

■ The trial court determined that the City had been fully compensated. For an appellant to successfully attack such a finding of fact on appeal, it must show that a clear preponderance of the evidence is against the finding of the trial court. *Steensland v. Noel*, 1912, 28 S.D. 522, 134 N.W. 207; *Collegian v. Hileman*, 1975, S.D., 226 N.W.2d 163. Appellant claims that the testimony of City Commissioner Dave Witte conclusively discloses that the City had not been compensated by its insurance carrier for the percentage of completion payments made to the defendants. However, Commissioner Witte's testimony is totally contrary to the testimony given by George Allen, the adjuster for the General Adjustment Bureau, the company that settled the loss with the City. In his deposition, Mr. Allen testified specifically that he had considered all of the improvements to the building accomplished by the construction contracts in question here when he was determining the value of the building and in settling the final loss. Indeed, it appears that when Commissioner Witte was computing the replacement value of the building, he included in the amount the value of the improvements made to the building by the defendants. As we have stated, a verdict or finding will not be disturbed on appeal unless after examination of the entire record the clear preponderance of the evidence is against the court's findings or the verdict. The appellant has failed to convince us that the trial court's determination was incorrect by a clear preponderance of the evidence.

The judgment is affirmed.

All the Justices concur.

---

2. As stated in *Jones v. American Oil Co.*, 1973, 87 S.D. 384, 209 N.W.2d 1, "[l]anguage in a contract may be said to be ambiguous when 'it is reasonably capable of being understood in more than one sense.' "