James Phillip **ADELMAN** and Elizabeth Agnes Adelman, Plaintiff/Appellant,

v.

**MINNWEST BANK OF ORTONVILLE, ORTONVILLE, MINNESOTA,** Defendant/Appellee.

**Civ. No. 87–1052.**

United States District Court, D. South Dakota, C.D.

Nov. 4, 1988.

See also, Bkrtcy., 90 B.R. 1012.

Max A. Gors, Gors, Braun & Zastrow, Pierre, S.D., for plaintiff/appellant.

James A. Wyly, Aberdeen, S.D., for defendant/appellee.

William P. Westphal, Sr., Minneapolis, Minn., U.S. Trustee.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Plaintiff/Appellants James and Elizabeth Adelman ("the Adelmans") have appealed an order of the Bankruptcy Court for the District of South Dakota denying their motion to enforce the Adelmans' interpretation of a stipulated settlement between the Adelmans and Defendant/Appellee Minnwest Bank of Ortonville ("Minnwest"). This Court affirms the bankruptcy court's order and dismisses the appeal.

1. Technically, the Adelmans were indebted to the Norwest Bank in Ortonville. Between the time that the settlement was executed and this

## I. *Facts*

On December 19, 1985, the Adelmans filed a Chapter 11 bankruptcy petition. Among the Adelmans' many creditors were Minnwest[1] and the State of South Dakota. Minnwest was a secured creditor of the Adelmans in the amount of some $313,000. The Adelmans owed the State of South Dakota approximately $6,000 of unpaid sales taxes at the time bankruptcy was filed.

On April 10, 1986, the Adelmans and Minnwest entered into a settlement formalized in a document called a stipulation. In this stipulation, the Adelmans agreed to transfer to Minnwest a number of assets and recognized that Minnwest had "a first priority security interest" in these assets. Minnwest agreed to release the Adelmans from their indebtedness and to sell back at specified prices several of the assets. The critical provision for purposes of this appeal stated:

12. [Minnwest] accepts the turnover of the collateral subject to any claims or obligations against the collateral, including, but not limited to the following:

a. The claimed prior lien of Norwest Bank of Aberdeen, South Dakota, on the inventory, equipment, accounts, etc. of Plains Agri–Sales of Aberdeen, South Dakota.

b. The lien of the Internal Revenue Service for FIT, FICA, FUTA and any other unpaid taxes due to the federal government arising out of the operation of the business known as Falls Livestock Equipment Center, in Sioux Falls, South Dakota, the inventory, equipment and accounts of which are collateral being turned over to the Bank, in the unknown but approximate amount of $11,679.76.

c. The lien of the State of South Dakota for unpaid sales and use taxes due to the State of South Dakota arising out of the operation of the business known as Falls Livestock Equipment Center, in Sioux Falls, South Dakota, the inventory, equipment and accounts of which are col-

appeal was brought, the Ortonville bank was sold and its name was changed to the Minnwest Bank of Ortonville.

lateral being turned over to the Bank, in the unknown but approximate amount of $6,043.50.

Debtors agree to contest any of the foregoing liens to the extent that the liens are subject to being contested.

The Adelmans prepared the stipulation, and Minnwest representatives signed the agreement after review. The bankruptcy court approved the stipulation on April 23, 1986, and eventually confirmed a reorganization plan on March 10, 1987. The final plan mentioned that the state tax claim would be paid, but did not specifically state who would pay the claim.

After confirmation of the plan, it became apparent that the Adelmans and Minnwest had different understandings of who was to pay the State of South Dakota. To compel Minnwest to pay the state taxes, the Adelmans filed in the bankruptcy court on September 18, 1987 a "Motion to Enforce the Terms of the Stipulation and Settlement Between [Minnwest] Bank of Ortonville and Debtors." The bankruptcy court held a hearing on this motion on October 29, 1987. After listening to testimony from two Minnwest employees and to arguments from both sides, the court denied the Adelmans' motion. The Adelmans have appealed the bankruptcy court order denying their motion to this Court.

The Adelmans argue that the language of the stipulation is unambiguous in placing the responsibility on Minnwest to pay the state tax claim. The Adelmans further argue that the parol evidence rule prohibits this Court from considering extrinsic evidence like Minnwest's intention in signing the stipulation. Minnwest counters that the Adelmans are attempting to rewrite the stipulation and that the parties intended Minnwest to pay off only lienors senior to it and not the junior state tax claim.

## II. *Discussion*

This appeal in essence raises two legal issues: 1) whether the stipulation is so clear that the parol evidence rule bars admission of extrinsic evidence; and 2) if the parol evidence rule does not apply, based on all the evidence, who should pay the state tax claim. Since these are both ques-

tions of law, this Court must review these issues de novo. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

## A. Parol Evidence Rule.

The parol evidence rule conclusively presumes that parties to a written contract have reduced their entire agreement to writing when the writing contains no uncertainty as to the object or extent of the obligations. Hence, the parol evidence rule prevents a party from introducing evidence of prior or contemporaneous conversations or declarations at variance with an unambiguous writing. *Northern Assurance Co. v. Grand View Bldg. Assoc.*, 183 U.S. 308, 318, 22 S.Ct. 133, 136, 46 L.Ed. 213 (1902); *Ford v. Luria Steel & Trading Corp.*, 192 F.2d 880, 883–84 (8th Cir.1951); Restatement (Second) of Contracts § 214. A prerequisite to application of the parol evidence rule is that the written agreement be unambiguous. The stipulation between the Adelmans and Minnwest does not satisfy this prerequisite.

The Adelmans argue that Minnwest is clearly obliged to pay the state taxes under the following language:

12. [Minnwest] accepts the turnover of the collateral subject to any claims or obligations against the collateral, including, but not limited to the following:

c. The lien of the State of South Dakota for unpaid sales and use taxes ...

This language, however, contains an ambiguity which has triggered this litigation. The clause authorizing Minnwest to take collateral "subject to" the state's junior lien is reasonably susceptible to two interpretations: 1) that Minnwest would pay the state's claim; or 2) that Minnwest merely acknowledged that the state asserted a claim to the collateral and did not agree to relieve that debtor of responsibility for that claim. *See Champale, Inc. v. Joseph S. Pickett & Sons, Inc.*, 599 F.2d 857, 859 (8th Cir.1979) (contract ambiguous if reasonably susceptible to more than one construction); *see also Sioux Falls v. Henry Carlson Co., Inc.*, 258 N.W.2d 676, 679 (S.D.1977). Because the contract provision at issue is ambiguous, this Court may rely on evi-

dence extrinsic to the written agreement to determine the meaning of the disputed language. *Medtronic, Inc. v. Catalyst Research Corp.*, 664 F.2d 660, 664 (8th Cir. 1981); *see also Mitzel v. Hauck*, 78 S.D. 543, 105 N.W.2d 378 (1960).

**B. Responsibility to Pay State Tax Claim Under the Stipulation.**

■ According to the testimony of two Minnwest officials before the bankruptcy court, Minnwest did not know whether the tax liens were senior to Minnwest's lien. Minnwest understood that the stipulation would neither upset the priorities of the various liens nor require Minnwest to pay claims junior to Minnwest's lien. Minnwest thus read the agreement to mean that it would pay claims senior to it, but that the Adelmans would retain responsibility for junior claims. Minnwest argues that the negotiations before the execution of the stipulation support its understanding that Minnwest was not responsible for the state tax claim. Minnwest asserts that neither the stipulation nor the plan provides that Minnwest pay the state claim. Indeed, Minnwest points out, the Adelmans' proposed plans filed after the stipulations mentioned the state tax claim as if the Adelmans bore responsibility for the claim.

The Adelmans essentially argue that the language of the stipulation is clear. The Adelmans argue that the stipulation did not differentiate junior from senior liens and thus placed upon Minnwest responsibility for all liens on transferred collateral. The Adelmans did not present any witnesses to testify at the bankruptcy court hearing on their motion.

Given the evidence on the record and the arguments of the parties, this Court finds that the bankruptcy court's denial of the motion was not erroneous. The conclusion that the stipulation does not transfer to Minnwest responsibility for paying the state tax claims is confirmed by the maxim that ambiguities in contracts may be construed against the drafter. *Central Nat. Ins. Co. of Omaha v. Devonshire Coverage Corp.*, 565 F.2d 490 (8th Cir.1977); *Sioux Falls v. Henry Carlson Co., Inc.*, 258 N.W. 2d 676, 679 (S.D.1977). The stipulation did

not clearly transfer responsibility to Minnwest to pay the state tax claim, and evidence shows that at least Minnwest understood that it would not be responsible for the state tax claim unless the claim was senior to Minnwest's lien. Though the stipulation did not clearly confirm Minnwest's understanding, the Adelmans provided no evidence to contravene Minnwest's understanding. Therefore, this Court affirms the bankruptcy court's order.