**In re Keith T. HARSTAD and Diane N. Harstad, d/b/a Harstad Companies, Debtors.**

**Keith T. HARSTAD and Diane N. Harstad, d/b/a Harstad Companies, Plaintiffs,**

v.

**FIRST AMERICAN BANK, f/k/a Drovers First American Bank of South St. Paul, Defendant.**

**Bankruptcy No. 4–90–869.
Adv. No. 4–93–048.**

United States Bankruptcy Court,
D. Minnesota.

June 30, 1993.

William E. Connors, Fredrikson & Byron, Minneapolis, MN, for plaintiffs.

Daniel C. Beck, Winthrop & Weinstine, St. Paul, MN, for defendant.

## ORDER OF DISMISSAL

ROBERT J. KRESSEL, Chief Judge.

This adversary proceeding came on for hearing on April 21, 1993, on the defendant's motion to dismiss. Thomas G. Wallrich appeared for the plaintiffs and Daniel C. Beck appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 201. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F).

### UNDISPUTED FACTS

On February 16, 1990, the plaintiffs filed a case under chapter 11. On October 19, 1993, I confirmed their plan. Article X of the plan provides:

> The Court will retain jurisdiction until this Plan has been fully consummated for the following purposes: classification of the claims for damages form rejection of executory contracts or unexpired leases; determination of all questions and disputes regarding title to the assets of the estate and the determination of all causes of actions between Debtors and any other party, including but not limited to, any right of Debtors to recover assets pursuant to the provision of the Bankruptcy Code; correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purpose and intent of this Plan; interpretation and enforcement of the terms of this Plan; shortening or extending, for cause, of time fixed for doing any act or thing under this Plan; entry of any order, including any injunction, necessary to en-

force the title, rights and powers of Debtors; and entry of an order concluding the terminating this case. The Court may exercise its jurisdiction after notice and hearing or ex parte, as the Court determines to be appropriate.

Shortly after confirmation, the plaintiffs commenced this adversary proceeding seeking to avoid and recover a preferential transfer to the defendant in the amount of $140,663. The defendant moved for dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

### ISSUE

Can debtors bring a preference action after confirmation of a plan if their plan does not specifically and unequivocally provide for the post-confirmation retention of preference actions and if all recoveries inure solely to the benefit of the debtors?

### DISCUSSION

#### I.

#### Procedural Deficiencies

■ The plaintiffs have asked me to deny the defendant's motion because of procedural deficiencies. First, the plaintiffs assert they were improperly served since the motion was served 7, not 10 days before the hearing. Second, the plaintiffs maintain that the motion did not comply with the Local Rules since it did not contain a proof of service, it did not state the last day to file a response, and it failed to state the jurisdictional basis for the motion. While the defendant's motion suffers from both improper service and non-compliance with the Local Rules, I do not believe the plaintiffs were in any way prejudiced. Indeed, they submitted a well written, researched and reasoned brief which artfully analyzed each of the defendant's arguments. Beyond, the written submission, their attorney was well prepared and articulately argued the plaintiffs' position at the hearing. The plaintiffs' procedural objections are overruled.

## II.

### Procedural Standards

#### A. The Standard For Dismissal

■ The defendant has moved to have the plaintiffs' complaint dismissed pursuant to Rule 7012(b) and (c) or Rule 7056 both of the Federal Rules of Bankruptcy Procedure. Rule 7012(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Bankr.P. 7012(c). Since the defendant submitted affidavits and other supporting documentation with its motion, I must treat this motion as one for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.[1]

#### B. The Standard For Summary Judgment[2]

■ Summary judgment plays a very important role allowing the judge to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes to Rule 56. The importance of summary judgment cannot be overemphasized. Indeed, "[s]ummary judgment ... is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure). "The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co–Op., Inc.*, 838 F.2d 268, 273 (8th Cir.1988); *see Catrett v. Johns–Manville Sales Corp.*, 756 F.2d 181, 189–90 (D.C.Cir. 1985) (Bork, J., Dissenting).[3]

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

#### A. The Burdens

##### 1. The Moving Party

■ Initially, the burden is on the party seeking summary judgment. It is the moving party's job to inform the court of the basis for the motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Simply stated, the moving party must show the court that there is an absence of evidence

---

1. According to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Thus, decisions under Rule 56 of the Federal Rules of Civil Procedure are applicable.

2. *See generally,* William W. Schwarzer, Allan Hirsch, David J. Barrans, *The Analysis and Decision of Summary Judgment Motions; A Monograph on Rule 56 of the Federal Rules of Civil Procedure,* 139 F.R.D. 441 (1992); George Loew-

enstien, *Second Thoughts about Summary Judgment,* 100 Yale L.J. 73 (1990); Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745 (1974); Currie, *Thoughts on Directed Verdicts and Summary Judgment,* 45 U.Chi.L.Rev. 72 (1977).

3. Judge Bork's comments were later adopted by the United States Supreme Court. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

to substantiate the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2553. To that end, the movant discharges its burden by asserting that the record does not contain a triable issue and identifying that part of the record which supports the moving party's assertion. *See Id.* at 323, 106 S.Ct. at 2552; *City of Mt. Pleasant*, 838 F.2d at 273.

### 2. *The Non-moving Party*

■ Once the movant has made its showing, the burden of production shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [its] ... own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'" establish that there is specific and genuine issues of material fact warranting a trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). The non-moving party cannot cast some metaphysical doubt on the moving party's assertion. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party must present specific significant probative evidence supporting its case, *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990) sufficient enough "to require a ... judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Any affidavits must "be made on *personal* knowledge, must set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e) (emphasis added). If, however, the evidence tendered is "merely colorable," or is "not significantly probative," the non-moving party has not carried its burden and the court must grant summary judgment to the moving party. *Id.* at 249–50, 106 S.Ct. at 2511. Here, no material facts are in dispute. Accordingly, judgment may be entered as a matter of law.

## III.

### *Post–Confirmation Preference Actions by a Debtor*

The defendant urges me to dismiss this adversary proceeding for four reasons: Subject matter jurisdiction is absent; the plaintiffs lack standing; this action is not "for the benefit of the estate"; and because of the plaintiffs' pre-confirmation representations, they are judicially estopped. While I have subject matter jurisdiction, I am granting summary judgment to the defendant and dismissing the adversary proceeding as the plaintiffs lack standing and any preference recoveries will not benefit the estate.

### A. *Do I Have Subject Matter Jurisdiction to Hear Post–Confirmation Preference Actions Brought by a Debtor?*

■ Jurisdiction generally and bankruptcy jurisdiction particularly are among the most misunderstood and misapplied concepts in the law. Federal jurisdiction is essentially statutory. As with all statutes, analysis focuses on words of Congress. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("the fundamental canon [of] statutory interpretation begins with the language of the statute itself."); *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). "[My] sole function ... is to enforce [the statute] according to its terms." *Id.* 489 U.S. at 241, 109 S.Ct. at 1030 (citing *Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). Defining the terms of the statute, I must "presume that a legislature says in a statute what it means and means in a statute what it says ..." *Connecticut Nat'l. Bank v. Germain*, — U.S. at —, 112 S.Ct. at 1149 giving effect to the statutes' plain meaning. *See, e.g., Patterson v. Shumate*, — U.S. —, —— ——, 112 S.Ct. 2242, 2248–51, 119 L.Ed.2d 519 (1992); *Germain*, — U.S. at —— ——, 112 S.Ct. at 1149–50; *U.S. v. Nordic Village, Inc.*, — U.S. ——, ——, 112 S.Ct.

1011, 1015, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas*, — U.S. —, —, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991); *Board of Governors v. MCorp Financial, Inc.*, — U.S. —, —— — ——, 112 S.Ct. 459, 465–66, 116 L.Ed.2d 358 (1991).[4]

Subject matter jurisdiction is governed by section 1334 of Title 28. Specifically, "the district court:

1. shall have original and exclusive jurisdiction of all cases under title 11; and

2. shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11...."

28 U.S.C. §§ 1334(a) and (b). While this provision purports to give the district court exclusive bankruptcy jurisdiction, pursuant to the delegation powers in 28 U.S.C. § 157(a), the district court for this district has "provide[d] that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Local Rule 201. However, I may only "hear and determine ... core proceedings arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b)(1).

In this proceeding I have both the *jurisdiction* and the *power* to decide the plaintiffs' preference actions. Addressing jurisdiction first, a preference action clearly "arises under title 11." *See* 11 U.S.C. 1334;[5] *Robinson v. First Financial Capital Management Corp.* (*In re Sweetwater*), 55 B.R. 724, 728–29 (C.D.Utah 1985), *aff'd in part, rev'd in part, Citicorp Acceptance Co., Inc. v. Robinson* (*In re Sweetwater*), 884 F.2d 1323 (10th Cir.1989). After all, title 11 expressly creates preference actions. *See id.*

Congress has also expressly granted me the power to hear and determine "[p]roceedings to determine, avoid, or recover preferences." 28 U.S.C. § 157(b)(2)(F).[6] Thus, putting sections 1334 and 157 together leads me to one conclusion: I have both the jurisdiction and

---

**4.** The "plain language" doctrine is widely accepted and applied by a majority of the current Supreme Court. *See, e.g., Patterson v. Shumate*, — U.S. —, —— – ——, 112 S.Ct. 2242, 2248–51, 119 L.Ed.2d 519 (1992); *Connecticut Nat'l Bank v. Germain*, — U.S. —, —— – ——, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992); *U.S. v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas*, 112 S.Ct. 527, 530 (1991); *Board of Governors v. MCorp Financial, Inc.*, — U.S. —, —— – ——, 112 S.Ct. 459, 465–66, 116 L.Ed.2d 358 (1991). Although the "plain meaning" doctrine is not always followed,

[it is] regrettable that we have a legal culture in which [legislative history and policy] arguments have to be addressed ... with respect to a statute utterly devoid of [ambiguity].

*Union Bank*, — U.S. at —, 112 S.Ct. at 534 (Scalia, J., concurring).

... [T]he phenomenon [of looking outside the "plain meaning" of words in the statute] calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting text, that it any longer makes sense to talk of "a government of laws, not of men."

*Patterson*, — U.S. at —— – ——, 112 S.Ct. at 2250–51 (Scalia, J., concurring).

**5.** Interestingly, the House Report on section 1471 of Title 28, the section on which section 1334 is based, provides:

The phrase "arising under:" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11.... Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in ... chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), *reprinted in,* 1978 U.S.Code Congr. & Ad.News 5787, 5963, 6401.

**6.** Bankruptcy courts, like all federal courts, can only hear those cases that Congress authorizes. *See Aldinger v. Howard*, 427 U.S. 1, 13, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). However, as we have seen, even Congress' power is limited in the types of cases it can entrust to the non-article III judges. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 75, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598 (1982) ("Art. III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws.") (plurality opinion).

the power to decide a preference action whenever brought.

The defendant, going beyond the express language of the statute, relies on the plan's jurisdictional provision and cites a string of cases opining that confirmation limits bankruptcy jurisdiction. In particular, the defendant relies on *A.R.E. Mfg. Co, Inc. v. U.S.* (*In re A.R.E. Mfg. Co., Inc.*), 138 B.R. 996 (Bankr.M.D.Fla.1992). The *A.R.E. Mfg.* court, without explanation, analysis or attention to the text of Title 28 opines:

> It is well established that the jurisdiction of the bankruptcy court may be retained by means of specific reservation of jurisdiction in a Chapter 11 plan. If, however, the relief sought does not clearly fall within a specific reservation of jurisdiction, there is no subject matter jurisdiction.

*Id.* at 999. This proposition is puzzling. Indeed, the *A.R.E. Mfg.* court summarily supports its "well established" proposition by citation to *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage, Co.* (*In re Neptune World Wide Moving, Inc.,*) 111 B.R. 457 (Bankr.S.D.N.Y.1990). *Neptune* stands for the proposition that unless a debtor's confirmed plan of reorganization specifically provides, a bankruptcy judge does not have subject matter jurisdiction to hear and decide post-confirmation preference actions. *Id.* at 462–64. However, the *Neptune* decision is simply incorrect.

 The *Neptune* court arrived at its conclusion by strictly focusing on section 1141 of Title 11. Specifically, the *Neptune* court stated:

> The confirmation of a Chapter 11 plan does not totally divest a bankruptcy court of all jurisdiction in the case. Thus, 11 U.S.C. § 1141(b) permits a debtor to insert language in the plan and order confirming the plan which authorizes the bankruptcy court to retain a limited jurisdiction over specified property of the estate which did not vest in the

newly confirmed debtor. This provision reads as follows:

> (b) *Except as otherwise provided in the plan* or the order confirming the plan, the confirmation of the plan vests all of the property of the estate in the debtor.

Therefore, in accordance with 11 U.S.C. § 1141(b), a Chapter 11 plan and order confirming the plan may specifically provide for retention of jurisdiction by the bankruptcy court over actions pending at the time of confirmation and actions commenced after the time of confirmation, and over any assets recovered as a result of the these actions.

*Id.* at 462 (emphasis in original) (citation omitted). While the *Neptune* court's analysis is appealing, it confuses jurisdiction with what constitutes property of the estate and ignores the plain language of the section 1334. The *A.R.E.* court obliviously perpetuates the problem. I decline to exacerbate the common misunderstanding of jurisdiction. After all, section 1334 specifically provides that I have *jurisdiction* to hear "*all* civil proceedings arising under title 11." 28 U.S.C. § 1334. Section 1334 says what it means and means what it says. *See Germain*, —— U.S. at ——, 112 S.Ct. at 1149. Congress specifically said "*ALL*" civil proceedings. All means all. There is no limiting language. The premise of both the *A.R.E.* and *Neptune* decisions is the faulty assumption that a plan can expand or limit a court's jurisdiction. However, neither a plan of reorganization nor a court can substitute its ideas of section 1334 jurisdiction for what Congress has articulated.[7] Section 1334 is an express Congressional articulation of what subject matter jurisdiction is. Absent Constitutional infirmities, when Congress speaks, its words must prevail. Congress has clearly spoken: I have jurisdiction.

**B.** *Do the Debtors' Have Standing to Pursue Their Preference Action?*

 Next, the defendant has urged me to dismiss the adversary proceeding arguing that the plaintiffs lack standing.[8] I

---

**7.** It is axiomatic that parties cannot confer jurisdiction on a court by agreement.

**8.** While the parties sometimes use standing and jurisdiction interchangeably, those terms are not synonymous. This confusion, unfortunate-

agree with the defendant. The plaintiffs, not having specifically provided for the retention and enforcement of the preference action, lack standing.

 Upon filing a voluntary case under title 11, the petitioning entity becomes a debtor. 11 U.S.C. § 101(13) ("debtor" means the person concerning which a case under Title 11 has been commenced). If that case is a case under chapter 11, that entity becomes a debtor in possession. *See* 11 U.S.C. § 1101(1) ("Debtor in possession" means the "debtor"). Being a debtor in possession is special and unique. Indeed, "debtor[s] in possession ... have all the rights ... and powers ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). *See also WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1006–07 (1st Cir.1988) (debtor in possession has the power to avoid preferential transfers) (dicta); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir.1988) (unless a trustee has been appointed in a chapter 11 case, the avoidance powers belong to the debtor in possession) (dicta); *In re Howards Appliance Corp.*, 91 B.R. 204, 207 (E.D.N.Y. 1988), *rev'd on other grounds*, 874 F.2d 88 (2d Cir.1989) (debtor in possession has rights and powers of a trustee to avoid transfers); *In re Miniscribe Corp.*, 123 B.R. 86, 87 (Bankr.D.Colo.1991) ("Where a debtor acts as a debtor-in-possession in a Chapter 11 case, the debtor-in-possession has the power of a Chapter 11 trustee to pursue a cause of action under 11 U.S.C. § 547."); *In re Steelvest, Inc.*, 112 B.R. 852, 854 (Bankr.W.D.Ky.1990) (the debtor in possession stands in the trustee's shoes and is bestowed all the rights of a trustee to avoid transfers); *In re Iowa–Missouri Realty Co., Inc.*, 86 B.R. 617, 619 (Bankr. W.D.Mo.1988) (same). Yet, being a debtor in possession is significantly different from being a trustee. Indeed, a debtor in possession and a trustee have different life spans. That is, while the trustee survives

confirmation, the debtor in possession ordinarily does not.[9] *In re Grinstead*, 75 B.R. 2, 3 (Bankr.D.Minn.1985); *In re T.S.P. Indust., Inc.*, 120 B.R. 107, 109 (Bankr. N.D.Ill.1990); *In re NTG Indust., Inc.*, 118 B.R. 606, 610 (Bankr.N.D.Ill.1990).

 The death of the debtor in possession is significant and plays an important role in determining whether a debtor has standing to bring a post-confirmation preference action. Preference actions are governed by section 547 of the Code. In relevant part, section 547 provides that "the *trustee* may avoid any transfer of an interest of the debtor in property—...." 11 U.S.C. § 547(b) (emphasis added). The recovery of a preference is governed by section 550. Section 550, in relevant part, provides that "the *trustee* may recover, for the benefit of the estate, the property transferred...." 11 U.S.C. § 550(a) (emphasis added). As noted, before confirmation the debtor in possession would have the same rights as a trustee to avoid a preference. However, after confirmation, the debtor is ordinarily no longer the debtor in possession and therefore would lose its rights to utilize the powers of a trustee, including the powers to avoid and recover preferences. *See* 11 U.S.C. § 1141(b). However the Code contains a way to avoid this result. Section 1123(b)(3)(B) provides that a

> plan may ... provide for ... the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claims or interests [belonging to the debtor or to the estate]...."

11 U.S.C. § 1123(b)(3)(B). Thus, a debtor in possession may preserve preference claims if it establishes that the plan provides:

1. for the retention; and

2. enforcement by the debtor, by the trustee, or by a representative of the

---

ly, widely exists among both attorneys and judges alike. As I previously discussed, it is Title 28 which governs bankruptcy jurisdiction, not Title 11.

**9.** Section 1141 provides that the plan may override its vesting of property of the estate. In a case where some or all of the property of the estate remains property of the estate, the debtor would still be a debtor in possession.

estate appointed for such purpose [10];

3. of a claim or interest belonging to the debtor or the estate.

11 U.S.C. § 1123(b)(3)(B). *See also, Kroh Bros. Dev. Co. v. United Missouri Bank of Kansas City, N.A. (In re Kroh Bros. Dev. Co.),* 100 B.R. 487, 494 (Bankr.W.D.Mo. 1989) (burden of establishing standing is on the party whose standing is questioned) (citing *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857 (10th Cir.1986)). The plaintiffs argue that they have met the requirements of section 1123(b)(3)(B) contending express reservation is only required where a party other than the debtor or the trustee seeks to enforce the preference claim. The defendant, on the other hand, takes a much broader view and argues that specific and unequivocal language of retention is always required. Thus, I am faced with this issue: Does section 1123(b)(3)(B) require specific and unequivocal retention of a claim or interest?

### 1. *Does Section 1123(b)(3)(B) Require Specific and Unequivocal Language of Retention?*

■ As before, the task of resolving the dispute over the meaning of section 1123(b)(3)(B) begins with the language of the statute. *Ron Pair Enters., Inc.,* 489 U.S. at 240, 109 S.Ct. at 1030. In most cases, the plain meaning of the legislation is conclusive. *Id.* 489 U.S. at 242, 109 S.Ct. at 1031. However, where the plain language is ambiguous or where literal application of the statute will produce a result at odds with the intention of the drafters, it is prudent to examine the legislative history as well as the natural and plain implications that flow from the language. *See id.; see, e.g., Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 787, 116 L.Ed.2d 903 (1992). Here, the natural and plain implications of the statute lead to one conclusion:

A plan of reorganization must specifically and unequivocally retain preference actions.

Turning to the statute, section 1123(b)(3)(B) on its face is devoid of language quantifying or qualifying the language required by a debtor attempting to retain preference actions. The consequences of retention, however, are significant implying that the language must be specific and unequivocal.

First, retention of preference actions is of great consequence to creditors. Usually, those entities which are the subject of preference action are still creditors and have a right to vote on the debtor's plan. Creditors, exercising that right, must have the informed opportunity to reasonably understand what their benefits and what their potential liabilities are upon confirmation of that plan. However, when the debtor fails to specifically and unequivocally retain preference actions, creditors are effectively stripped of their right to information and are left to vote and accept a plan without realizing that they are potential targets of a post-petition complaint.

Even unsecured creditors who are not potential preference defendants are interested in potential preference recoveries. The potential amount of preference recoveries and the proposed distribution of those recoveries enter into the decision of whether or not the creditors want to accept the plan's proposed treatment of unsecured creditors.

Especially interesting to unsecured creditors, and to the court for that matter, is the requirement of section 1129(a)(7)(A)(ii) that each creditor accept the plan or receive at least as much as it would receive in a chapter 7 liquidation.[11] That is, since preferences could be recovered in a chapter 7

---

**10.** To determine whether a representative was appointed, a separate two part test must be entertained. Succinctly stated:

Under § 1123(b)(3)(B), a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish two elements:

(1) that it has been appointed;

(2) that it is a representative of the estate.

*Retail Mktg. Co. v. King (In re Mako, Inc.),* 985 F.2d 1052, 1054 (10th Cir.1993) (quoting *Temex*

*Energy, Inc. v. Hastie & Kirschner (In re Amarex, Inc.),* 96 B.R. 330, 334 (W.D.Okla.1989)); *Citicorp Acceptance Co. v. Robinson (In re Sweetwater),* 884 F.2d 1323, 1326 (10th Cir. 1989).

**11.** This is the so-called "best interests of creditors test."

case, creditors need to know if the preferences will be pursued in a chapter 11 case before they vote on the plan and the court needs to know before it decides whether to confirm the plan. If the retention language is not clear and unequivocal, creditors and the court are misled into believing preferences were not assumed. Congress specifically said: If a debtor wants to preserve what would normally be lost its plan must provide for such retention. Congress knew how to provide a specific exception. Debtors must know how to invoke it. Debtors in possession must unequivocally provide for retention in their plan. *See Northwest Nat'l Bank v. Retail Mktg. Co. (In re Mako, Inc.)*, 120 B.R. 203, 209 (Bankr.E.D.Okl.1990), *aff'd*, 985 F.2d 1052 (10th Cir.1993). *See, e.g., Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.)*, 111 B.R. 457, 463–64 (Bankr. S.D.N.Y.1990).

The plaintiffs urge me to follow *J.E. Jennings, Inc. v. William Carter Co. (In re J.E. Jennings, Inc.)*, 46 B.R. 167 (Bankr. E.D.Pa.1985) where the court found that a debtor could pursue post-confirmation preference actions if its plan dilutedly provided that jurisdiction was retained "to recover assets pursuant to the provisions of the Code." *Id.* at 170. However, *Jennings* is not controlling and simply wrong.

Foremost, the *Jennings* court analyzed the wrong section of the Code. The *Jennings* court's analysis incorrectly focuses on section 1141(b). While section 1141(b) may aid me in determining what assets remain property of the estate, it has nothing to do with the retention of preference actions. *See Id.* (emphasis added). Congress specifically enacted section 1123(b)(3)(B) for that purpose. Any other interpretation of the Code would render section 1123(b)(3)(B) nugatory.

Beyond analyzing the wrong statute, the *Jennings* court's conclusion is internally inconsistent. The *Jennings* court curiously held that the debtor had to "specific[ally]" and "expressly" retain preference actions. *See In re J.E. Jennings, Inc.*, 46 B.R. at 170. The *Jennings* court then anomalously

concluded that the debtor had met its burden. *Id.* Specific means: "precisely formulated or restricted; definite; explicit; of an exact or particular nature." *Blacks Law Dictionary*, 1398 (6th ed. 1991). There is nothing definite, explicit or exacting in a statement like: "the Bankruptcy Court will retain jurisdiction ... [for] the following purposes: ... any right of the Debtors to recover assets pursuant to the provisions of the Code." *In re J.E. Jennings, Inc.*, 46 B.R. at 170. I cannot agree with the plaintiffs and the *Jennings* court. Debtors must articulate with unequivocal specificity their intent to retain preference actions.

### 2. Did the Debtors' Plan Specifically and Unequivocally Provide for the Retention of Preference Actions?

 Turning to the plaintiffs' plan, Article X, in relevant part, provides that "[t]he Court will retain jurisdiction ... for the following purposes: ... the determination of all causes of actions between Debtors and any other party, including but not limited to, any right of Debtors to recover assets pursuant to the provision of the Bankruptcy Code...." This is an ambiguous, meaningless, blanket statement of no practical significance which ignores the Code's distinction between "avoidance" and "recovery". The provision does nothing to alert a reasonable creditor of potential liability or recovery arising from post-petition preference actions. A reasonable creditor must understand that preferences are being retained. After all, a chapter 11 plan is a contract between the debtor and its creditors. Contract law gives effect to the parties' wishes, but they must express this intent clearly. That is, a creditor must have a meaningful opportunity to review, analyze and understand what it is accepting or rejecting. When the creditor's unrestricted right to rely and understand the terms of the contract is called into question, it is the debtor who must lose. As with all contracts, any ambiguity that exists in the chapter 11 plan are interpreted against the drafter. *Adelman v. Minnwest Bank of Ortonville (In re Adelman )*, 97 B.R. 569, 572 (Bankr.D.S.D.1988); *see*

*Local 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1406 (8th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986); *Premier Resources Ltd. v. Northern Natural Gas Co.*, 616 F.2d 1171, 1178 (10th Cir. 1980); *Restatement (Second) of Contracts* § 206 (1979) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."); E. Allan Farnsworth, *Farnsworth on Contracts*, § 7.12a (1990) (citation omitted) (whether terms are ambiguous is an objective determination; the language is ambiguous if it is subject to two reasonable interpretations.) *See also In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981) (translation of the terms of the chapter 11 plan call on the court to apply a general rule of contract interpretation). The law is clear: The onus is on the plan drafter. Vague statements, such as those contained in the plaintiffs' plan, will not and do not retain preference action within the meaning of section 1123(b)(3)(B).[12]

### C. *Will the Preference Recoveries Benefit the Estate?*

■ Next, the defendant urges me to dismiss the adversary proceeding because the preference action will not benefit the estate. I agree. The plaintiffs' post-petition recovery from preferences would not benefit creditors. Thus, even if the plaintiffs had standing to avoid the transfers under section 547, they would not have the right to recover them under section 550.

Section 550, in relevant part, provides that "to the extent that a transfer is avoided under Section ... 547 ... of this title, the trustee may recover, *for the benefit of the estate*, the property transferred." 11 U.S.C. § 550. Congress carefully articulated its desire in section 550, artfully making sure it was the estate, i.e. creditors, and not the debtor who benefits from any preference recovery. *Wellman v. Wellman*,

933 F.2d 215, 218 (4th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991) ("a trustee or a debtor-in-possession of a bankruptcy estate cannot maintain an avoidance action ... unless the estate would be benefitted by the recovery of the transferred property."); *Xonics, Inc. v. E & F King Co., Inc. (In re Xonics, Inc.)*, 63 B.R. 785, 787 (Bankr.N.D.Ill.1986) ("Congress carefully chose the words 'for the benefit of the estate' to insure that no debtor could claim that he was individually entitled to the 'benefit' of [trustee's preference avoidance and recovery power]."); *In re Jameson's Foods, Inc.*, 35 B.R. 433, 436 (Bankr.D.S.C.1983) ("Property recovered under § 550 becomes 'property of the estate' even if the property was not initial 'property of the estate.' "); *see also Whiteford Plastics Co. v. Chase Nat'l Bank*, 179 F.2d 582, 584 (2d Cir.1950) (liens cannot be avoided under the Act when only the debtor will benefit); *Vintero Corp. v. Corporacion Venezolana de Fomento (In re Vintero Corp.)*, 735 F.2d 740, 742 (2d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984) (same); *In re Schwab*, 613 F.2d 1279, 1281 n. 2 (5th Cir.1980) (same). The plaintiffs' plan provides for a payment to creditors from a pot of money which will be unaffected by any preference recoveries. That payment will not increase if they were successful in recovering those preferences. Thus, any recovery would benefit only the plaintiff and not their estate or their creditors.

The plaintiffs', understanding that creditors are not receiving any part of the recovery, still argue that the preference recoveries will be beneficial to the estate. In support, the plaintiffs cite *Tennessee Wheel & Rubber Co. v. Captron Corp. Air Fleet (In re Tennessee Wheel & Rubber Co.)*, 64 B.R. 721 (Bankr.M.D.Tenn.1986). Under *Tennessee Wheel* all post-petition preference recoveries by a debtor benefit creditors. *Id.* at 725–26. This argument is somewhat disingenuous.

---

12. On a purely technical level, this section as a supposed jurisdiction section states only what the debtor's think the court's jurisdiction will be. There would still be no provision providing standing for the debtors to bring the action.

512

 The *Tennessee Wheel* court, as well as many others that have addressed the issue, support their conclusion by incorrectly focusing their analysis on plan feasibility. *See In re Tennessee Wheel & Rubber Co.*, 64 B.R. at 725–26 (listing and discussing cases) ("The preference and recoveries are essential to the debtor's ability to pay its creditors pursuant to the confirmed plan."). Feasibility is a confirmation requirement. *See* 11 U.S.C. § 1129(a)(11). If a plan is not feasible, it should not be confirmed. The plaintiffs' represented in their plan and disclosure statement and testified at the confirmation hearing that they would be able to make all plan payments without any mention of preferences.

Beyond incorrectly focussing on feasibility, the *Tennessee Wheel* and other courts assume that any increase in wealth to the reorganized debtor will benefit the creditors. I do not agree. After all, the debtors, not committing recoveries to their creditors, are in no way obligated to segregate or even keep the recoveries. That is, once preferences are recovered, the debtors have sole unrestricted authority to dispose of the preference recovery. They can spend, invest or even burn the recoveries. These actions do not benefit creditors. Creditors must be meaningfully and measurably benefitted. The amorphous benefits the plaintiffs claim here do not and will not suffice.

### IV.

#### *Conclusion*

While the plain language of sections 1134 and 157 of Title 28 vests me with jurisdiction to decide preference actions whenever brought, debtors who bring preference actions post-confirmation must specifically and unequivocally draft a plan provision notifying reasonable readers of the plan of their retention. If the debtors meet this standard, they may prosecute the preference actions. In order for the debtors to recover any avoided preferences, the recovery must be for the benefit of the estate and not the debtor. In this case, the plaintiffs' plan did not retain the preferences nor does their plan provide that their recovery would benefit their estate or their creditors.

**THEREFORE, IT IS ORDERED:**

1. The defendant's motion for summary judgment is granted; and

2. This adversary proceeding is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**