Demetrios B. **HASEOTES** and CM Acquisitions, Inc., Appellants,

v.

**CUMBERLAND FARMS, INC.**, Appellee.

No. 95–40112–NMG.

United States District Court, D. Massachusetts.

Dec. 31, 1997.

---

6. We note in passing that this result is fully consistent with *Penrod's* concern that prospective creditors of a reorganized firm be able to ascertain the post-confirmation status of pre-bankruptcy encumbrances by referring to the plan and confirmation order. *See Penrod*, 50 F.3d at 463.

Patrick Dinardo, Sullivan & Worcester, Boston, MA, for Cumberland Farms, Inc.

Stephen F. Gordon, Gordon & Wise, Boston, MA, for Demetrios B. Haseotes and CM Acquisitions, Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On May 12, 1995, the Bankruptcy Court issued Findings and Conclusions and a Decree (collectively, the "Order") which

1) ordered Demetrios B. Haseotes ("Haseotes") and CM Acquisitions, Inc. ("CMA") (collectively, "the Appellants") to transfer to Cumberland Farms, Inc. ("CFI") certain Class 12 Certificates at a cash price equal to the price the Appellants paid for them,

2) enjoined Haseotes from entering CFI's premises except for attending board meetings or with written permission of CFI's president,

3) enjoined Haseotes from communicating with any CFI officers or employees except as authorized by CFI's president or board of directors or in connection with certain specified projects,

4) enjoined the Appellants from acquiring any further Class 12 Certificates, and

5) ordered the disgorgement by the Appellants of profits earned on its Class 12 Certificates.

Pending before this Court is an appeal from that Order.

## I. *Procedural Background*

On May 1, 1992, CFI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("the Code"). The Bankruptcy Court confirmed CFI's plan of reorganization (the "Plan") on October 22, 1993.

In March of 1995, CFI filed a complaint for injunctive and declaratory relief against 1) Haseotes, a shareholder and director of CFI, and 2) CMA, an entity wholly-owned by Haseotes' wife. The complaint alleged that Haseotes 1) breached his fiduciary duties as a director by using CMA to purchase at a substantial discount Class 12 Certificates issued pursuant to CFI's Plan, and 2) interfered with CFI operations in violation of the Plan.

After a preliminary hearing on April 4, 1995, the Bankruptcy Court issued a preliminary injunction 1) enjoining the Appellants from purchasing any further Class 12 Certificates and 2) enjoining Haseotes from entering CFI's premises or communicating with CFI's employees in connection with the day-to-day management of the company.

The Bankruptcy Court held an evidentiary hearing on CFI's complaint on the May 3 and May 8, 1995. At the close of CFI's evidence, Haseotes moved for judgment in his favor as a matter of law. The Court ruled that Haseotes had not diverted a corporate opportunity as a result of CMA's purchase of Class 12 Certificates and that he was, therefore, entitled to such a judgment.

On May 12, 1995, the Court reversed itself and issued an Order in which it ruled that the Appellants' purchase of Class 12 Certificates did constitute diversion of a corporate opportunity. The Court also ruled that those purchases constituted a breach of fiduciary duty and that Haseotes had violated the Plan provision limiting his role in CFI's day-to-day management. This appeal followed.

## II. *Factual Background*

CFI is a closely held, family-owned corporation with two classes of common stock, Class A (voting) and Class B (non-voting). Haseotes, a member of CFI's Board of Directors, owns 25% of both Class A and Class B stock. Until November of 1988, Haseotes was CFI's chief executive officer. Before CFI filed for bankruptcy, he was forced to resign as CEO by a major secured creditor.

### A. *Class 12 Certificates*

Pursuant to CFI's Plan of Reorganization ("the Plan"), CFI issued to each holder of an allowed Class 12 Unsecured Claim an assignable Class 12 Certificate of Indebtedness ("Certificate") in the face amount of its allowed claim. The Certificates provide for repayment in quarterly installments over five years without interest for the first four years.

Haseotes formed CMA in 1994. Although he subsequently transferred his stock in CMA to his wife, there is no dispute that Haseotes controls that corporation. In December, 1994, CMA began purchasing Certificates at about one-half of their outstanding balances and eventually acquired Certificates with a face value of over $700,000. Although Haseotes recommended to CFI's Board of Directors that the company purchase all the Certificates, he did not inform the Board that he intended to purchase Certificates.

### B. *Day-to-Day Management*

Section 6.1(h)(9)(A) of the Plan provides:

Effective as of the Effective Date and until the Unsecured Creditors Note has been paid in full:

The role of D.B. Haseotes in the day-to-day management of the Company will be limited to overseeing (i) the Company's interests in the Gulf Joint Venture and (ii) the Company's relationships with Vitol S.A., Inc. and with Newfoundland Processing Ltd. and refinery operations of such company.

That provision was included in the Plan after the Creditor's Committee and certain secured creditors insisted that Haseotes not be involved in CFI's day-to-day operations.

Prior to the entry of the preliminary injunction in April, 1995, Haseotes communicated with CFI employees with respect to day-to-day operations of the company, voiced opinions and was involved in many facets of CFI's business. Despite warnings by CFI management to cease his interference with day-to-day operations, Haseotes refused to comply.

## III. *Analysis*

### A. *Standard of Review*

A District Court reviewing the decision of a Bankruptcy Court applies a clearly erroneous standard to finding of fact and de novo review to questions of law. *In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 73 (1st Cir.1995). Conclusions of law are reviewed de novo and are set aside only when they are made in error or constitute an abuse of discretion. *In re DN Associates*, 3 F.3d 512, 515 (1st Cir.1993).

### B. *Subject Matter Jurisdiction*

■ The Appellants contend that the Bankruptcy Court lacked jurisdiction to hear the present case because it was filed after CFI had been discharged from bankruptcy. The Bankruptcy Court confirmed the Plan on October 22, 1993, and it became effective on December 30, 1993. CFI filed the subject adversary proceeding on March 22, 1995.

The Bankruptcy Court, however, retained jurisdiction over the matter by virtue of the Confirmation Order which provides:

From and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Debtor and the Reorganization Case pursuant to and for the purposes of sections 105(a), 1127 and 1142 of the Bankruptcy Code and for such purposes as may be necessary or useful to aid the confirmation, consummation, and implementation of the Plan as provided for in Article 11 of the Plan and for, among other reasons, the following purposes:

... To determine any and all disputes arising under or relating to the Plan;
...

To correct any defect, cure any omission or reconcile any inconsistency in the Plan, or this Order, as may be necessary to carry out the purposes and intent of the Plan; ...

To enter such order as may be necessary or appropriate ... to facilitate implementation of the Plan.

Confirmation Order pp. 31–32.

The issues before the Bankruptcy Court were 1) a disagreement between CFI's Board and Haseotes regarding the interpretation of the term "day-to-day management" as used in Article 6.1(h)(9)(A) of the Plan and 2) whether CMA's purchases of Certificates constituted a default under certain loan agreements with lenders which, in turn, put CFI in default under provisions of the Plan. The Bankruptcy Court clearly retained jurisdiction over those issues "to carry out the purposes and intent of the Plan". *See Harstad v. First American Bank*, 155 B.R. 500, 507 (Bankr.D.Minn.1993)("It is well established that the jurisdiction of the bankruptcy court may be retained by means of specific reservation of jurisdiction in a Chapter 11 plan."). The Bankruptcy Court had subject matter jurisdiction over the adversary proceeding.

## C. *Admission of Deposition Transcripts*

■ At the evidentiary hearing, the Bankruptcy Court admitted into evidence, over the Appellants' objection, the deposition transcripts of Frances Locklin, CFI's Senior Vice–President of Real Estate, and Kenneth Koehler, a member of CFI's Board. The use of depositions in adversary proceedings is governed by Fed.R.Civ.P. 32, made applicable by Bankruptcy Rule 7032. That rule allows the use of a deposition "for any other purpose permitted by the Federal Rules of Evidence." Fed.R.Civ.P. 32(a)(1).

Federal Rule of Evidence ("FRE") 611(a) states, in relevant part:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time.

Several courts have cited FRE 611(a) as authority for bankruptcy courts to allow the submission of direct testimony by written affidavit at trial provided the witnesses are present at the trial for cross-examination and redirect examination. *See Adair v. Sunwest Bank*, 965 F.2d 777, 779 (9th Cir.1992)("The procedure is essential to the efficient functioning of the crowded bankruptcy courts."); *Union State Bank v. Geller*, 170 B.R. 183, 186 (Bankr.S.D.Fla.1994). *Cf. Phonetele, Inc. v. American Telephone & Telegraph Co.*, 889 F.2d 224, 232 (9th Cir.1989)(stating that the use of written testimony "is an accepted and encouraged technique for shortening bench trials.").

Both Mr. Locklin and Mr. Koehler were present at the hearing and available for cross-examination at the Appellants' request. Furthermore, both depositions were taken at the Appellants' request and, presumably, they asked whatever questions they deemed relevant at the time. The Bankruptcy Court, therefore, had authority to admit transcripts of those depositions in lieu of direct testimony for the purpose of saving time.

## D. *Violation of the Plan*

■ The Appellants contend that the Bankruptcy Court's interpretation of section 6.1(h)(9)(A) of the Plan was incorrect as a matter of law. The Court found that the purpose and intent of that provision was to forbid Haseotes from participating in the day-to-day operations of CFI in order to preserve control of that function to the CEO. This Court agrees with that interpretation of the Plan.

■ The Appellants also contend that the Bankruptcy Court's finding that Haseotes violated the Plan was clearly erroneous. The Court found that certain activities of Haseotes violated section 6.1(h)(9)(A) of the Plan:

Whether we call what he's been doing as directions, orders, strong suggestions, they are by his own admission—he is very, I think, rather a forthright witness—strong suggestions—or merely suggestions, I am convinced that these activities violate the

intent and meaning of that provision in the plan.

Transcript II pp. 155–56.

The record supports that finding. Haseotes himself testified that he was involved in the day-to-day operations of CFI.

I believe it necessary. I consider myself as an encyclopedia. I know every store in the chain, I know every bit of this business.... my input has been invaluable and continues to be invaluable to the amount of money we spend.... Not orders, because I don't order these things. I suggest them, I give them ideas, and for the most part I'm there to counsel to them if they need help.

Transcript II p. 101.

### E. *The Bankruptcy Court's Injunction*

■ The Appellants contend that the injunction entered against Haseotes to ensure his compliance with section 6.1(h)(9)(A) of the Plan is overly broad. The Bankruptcy Court found that Haseotes was "constitutionally unable" to stay out of the day-to-day operations of CFI if he continued to have an office in CFI headquarters. The Court, therefore, enjoined him from:

(a) except for attending meetings of [CFI's] board of directors, entering [CFI's] premises without written authorization from [CFI's] president; or

(b) communicating with any officer or employee of [CFI] except

(i) as may be expressly authorized by [CFI's] president or board of directors; or

(ii) in connection with overseeing [CFI's] interests in the Gulf Joint Venture and [CFI's] relationships with Vitol S.A., Inc. and Newfoundland Processing, Ltd., and the related refinery operations.

The record supports the Court's finding that a decree simply enjoining violation of the Plan would be insufficient. Haseotes had previously violated the Plan despite the CFI Board's continuous protests. The order of the Bankruptcy Court enjoining Haseotes from entering CFI's premises is not, therefore, overly broad.

■ The Appellants also contend that the injunction violates Haseotes' rights of free speech under the First Amendment to the United States Constitution. An injunction acts as a prior restraint and thus bears a heavy presumption against constitutional validity. *See Auburn Police Union v. Carpenter,* 8 F.3d 886, 903 (1st Cir.1993). The Supreme Court, however, "has never held that all injunctions are impermissible." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 390, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669.

The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.

*Id.* An injunction that is narrowly tailored, based upon a continuing course of repetitive conduct and granted after a final adjudication on the merits that the speech is unprotected does not constitute an unlawful prior restraint. *See id.; Auburn Police Union,* 8 F.3d at 903.

The Bankruptcy Court's order enjoining Haseotes from communicating with CFI officers or employees was based upon a continuing course of repetitive conduct and was granted after a final hearing on the merits. To the extent that speech of Haseotes constitutes conduct in violation of the Plan, it is not protected by the First Amendment. To the extent, however, that the injunction enjoins communications which do not constitute interference with the day-to-day operations of CFI, it is overly broad and, therefore, unconstitutional. This Court will, therefore, modify the injunction to conform with the dictates of the First Amendment.

### F. *The Bankruptcy Court's Reversal of Its Prior Ruling on Diversion of a Corporate Opportunity*

■ At the close of CFI's case, Haseotes and CMA moved for judgment as a matter of law on all of CFI's claims. The Bankruptcy Court allowed their motion with respect to CFI's claim of diversion of a corporate opportunity. Consequently, Haseotes and

CMA presented no evidence on that issue during the proceeding.

When the Bankruptcy Court subsequently issued its Order, it reversed itself and ruled that Haseotes and CMA had diverted a corporate opportunity from CFI by purchasing Certificates at a discount. That reversal by the Court deprived the Appellants of their due process right to present evidence in their defense. This Court will, therefore, reverse that determination by the Bankruptcy Court.

██ The Bankruptcy Court's ruling that Haseotes breached his fiduciary duty to CFI and the consequential injunction, however, also rested on the ground of conflict of interest discussed below. The Bankruptcy Court's reversal of its prior finding that there was no diversion of a corporate opportunity is, therefore, deemed to be harmless error because the Court would have issued the same injunction regardless of its determination of that issue.

### G. *Conflict of Interest*

██ The Bankruptcy Court ruled that Haseotes breached his fiduciary obligation as a director of CFI because he purchased Certificates through CMA thereby intentionally placing himself in a potential conflict of interest. The Court reasoned that the purchases made it difficult for Haseotes to make future decisions on claims as a director free of his own personal interest as an owner of claims. It found that he made the purchases to profit personally on the claims and to aid his effort to terminate CFI's independent directors so that he could once again take control of the company. Those findings of fact are not clearly erroneous.

The Appellants contend that a director may purchase corporate obligations after a corporation has emerged from bankruptcy without creating a conflict of interest, citing *Manufacturers Trust Co. v. Becker*, 338 U.S. 304, 70 S.Ct. 127, 94 L.Ed. 107 (1949). The Court in *Becker*, however, specifically limited the scope of its decision by cautioning that courts should closely examine whether a conflict of interest exists where the record demonstrates "that a director free from all potential self-interest would be more likely to ...

effect a debt settlement than one not wholly disinterested ..." *Id.* at 315, 70 S.Ct. at 133. That is what the Bankruptcy Court did in this case. The record here contains sufficient evidence to find that purchases of Certificates by Haseotes created a potential conflict of interest sufficient to constitute a breach his fiduciary duty as a director of CFI.

### ORDER

For the foregoing reasons:

1) the decision of the Bankruptcy Court that the purchases of Certificates by Appellants constituted diversion of corporate opportunities is reversed,

2) Section Two of the Bankruptcy Court's Decree is hereby modified to read:

Demetrios B. Haseotes, his agents and servants, are hereby enjoined from:

(a) except for attending meetings of the Plaintiff's board of directors, entering the Plaintiff's premises without written authorization from the Plaintiff's president; or

(b) communicating *about the business of the Plaintiff in any way* with any officer or employee of the Plaintiff except

(i) as may be expressly authorized by the Plaintiff's president or board of directors; or

(ii) in connection with overseeing the Plaintiff's interests in the Gulf Joint Venture and the Plaintiff's relationships with Vitol S.A., Inc. and Newfoundland Processing, Ltd., and the related refinery operations.

(Emphasis supplied to added language), and

3) in all other respects the decision of the Bankruptcy Court is **AFFIRMED** and the appeal is **DISMISSED**.

So ordered.